1  DION N. COMINOS (SBN: 136522)
   dcominos@gordonrees.com
2  CATHERINE A. SALAH (SBN: 154524)
   csalah@gordonrees.com
3  GORDON & REES LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA 94111
5  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
6
   Attorneys for Defendant
7  COMPASS VISION, INC.

8                                                                    A D R
                       UNITED STATES DISTRICT COURT
9
                      NORTHERN DISTRICT OF CALIFORNIA
10
   DEBORAH WILSON                          CASE NO. C 07 - 03431
11
                              Plaintiff,    NOTICE OF REMOVAL OF
12                                          ACTION UNDER 28 U.S.C.
        vs.                                 § 1441(b) (DIVERSITY)
13
   COMPASS VISION, INC.; and NATIONAL
14 MEDICAL SERVICES, INC., d/b/a NMS LABS    Complaint filed May 22, 2007
15                            Defendants.   [JURY TRIAL DEMANDED]
16
17 TO THE CLERK OF THE ABOVE-ENTITLED COURT:

18       PLEASE TAKE NOTICE that Defendant Compass Vision, Inc. ("Compass Vision")

19 hereby removes this action from the Superior Court of the State of California, County of

20 Alameda, to the United States District Court for the Northern District of California pursuant to

21 28 U.S.C. §§ 1441 and 1446 and sets forth in support of its Notice of Removal of Action the

22 following:

23                            **BASIS FOR REMOVAL**

24       1.      Plaintiff Deborah Wilson ("Plaintiff") commenced this action on May 22, 2007,

25 by filing a Complaint for Damages under the caption of *Deborah Wilson v. Compass Vision, Inc.*

26 *and National Medical Services, Inc., D/B/A NMS Labs*, in the Superior Court of California,

27 Alameda County, Case No. VG07327104.  A true and correct copy of Plaintiff's Complaint is

28 attached hereto as Exhibit "A."

                                  -1-
   NOTICE OF REMOVAL OF ACTION                                CASE NO.

*(left margin, vertical text)* Gordon & Rees LLP  275 Battery Street, Suite 2000  San Francisco, CA 94111

*(left margin, vertical text)* GO 44 SEC. N  NOTICE OF ASSIGNMENT  TO MAGISTRATE JUDGE SENT

*(stamp)* FILED  JUN 29 2007  RICHARD W. WIEKING  CLERK U.S. DISTRICT COURT  NORTHERN DISTRICT OF CALIFORNIA  OAKLAND

BY FAX

2.     A Summons and Complaint for Damages were served on noticing Defendant, Compass Vision, by personal delivery on May 29, 2007. A true and correct copy of the Summons is attached hereto as Exhibit "B."

3.     The Court's records do not reflect service of a Summons and Complaint for Damages on co-defendant National Medical Services, Inc., D/B/A NMS Labs ("National Medical Services.")

4.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders received by Compass Vision in the state court action are attached hereto as Exhibit "C." Counsel for Compass Vision is informed and believes that Exhibits "A," "B" and "C" constitute all of the process, pleadings and orders filed in this case at the time of this removal.

5.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) in that it has been filed by Compass Vision within thirty (30) days after the receipt by Compass Vision of a copy of the initial pleading setting forth the claims for relief upon which Plaintiff's action is based.

6.     This Notice of Removal is being filed within one (1) year of the commencement of this action and therefore is timely filed under 28 U.S.C. § 1446(b).

## BASIS FOR FEDERAL DIVERSITY JURISDICTION

7.     This action is a civil action and is removable under 28 U.S.C. § 1441(b) because this Court has original jurisdiction over this case under 28 U.S.C. § 1332(a)(1).

8.     At the time of the filing of the Complaint and this Notice of Removal, Plaintiff was and is a citizen of California, inasmuch as Plaintiff alleges in her Complaint that she "is an individual and is now, and at all times mentioned in this complaint was, a resident of Alameda County, California." Plaintiff's Complaint at ¶ 1.

9.     At the time of the filing of the Complaint and this Notice of Removal, Compass Vision is and was a citizen of Florida and Oregon, inasmuch as it is a Florida Corporation with a principal place of business in the State of Oregon. Plaintiff's Complaint at ¶ 2. Additionally, at the time of the filing of the Complaint and this Notice of Removal, co-defendant National Medical Services is and was a citizen of Pennsylvania, inasmuch as it is a Pennsylvania

-2-

NOTICE OF REMOVAL OF ACTION                                                    CASE NO.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  Corporation with a principal place of business in the State of Pennsylvania. Plaintiff's

2  Complaint at ¶ 5. Accordingly, the diversity of citizenship requirement is satisfied. See 28

3  U.S.C. § 1332(a)(1).

4      10.      Plaintiff claims a loss of earnings, earning capacity and other associated losses

5  and expenses resulting from the suspension and future revocation of her license as a registered

6  nurse (Complaint at ¶ ¶ 35, 45 and 54) as well as severe emotional and psychological distress.

7  (Complaint at ¶ 54.) Plaintiff also claims punitive damages. (Complaint at ¶ 46 and Prayer for

8  Damages, page 13 of Complaint.) The amount in controversy requirement is satisfied inasmuch

9  as "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

10  costs." 28 U.S.C. § 1332(a).

11              **REMOVAL TO THIS JURISDICTION IS PROPER**

12      11.      Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, removal of this action from the

13  Superior Court of California, Alameda County to this Court is appropriate.

14      12.      The removal of this action to this Court is proper under 28 U.S.C. § 1441(a)

15  inasmuch as the Superior Court of the State of California, County of Alameda, where this action

16  was originally filed, is located within this judicial district.

17      13.      Compass Vision respectfully requests that this Court assume jurisdiction over this

18  matter and issue such orders and processes as may be necessary to bring before it all the parties

19  necessary for the trial hereof.

20      14.      Counsel for Compass Vision certifies that it will file a true and correct copy of

21  this Notice of Removal with the Clerk of the Superior Court of California, Alameda County, as

22  required by 28 U.S.C. § 1446, and give notice of same to Plaintiff.

23  Dated: __6/28__ , 2007          GORDON & REES LLP

24

25                                  By:

26                                      DION N. COMINOS
                                        CATHERINE A. SALAH
27                                      Attorneys for Defendant
                                        COMPASS VISION, INC.

28

-3-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# Exhibit A

Exhibit A

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 2 2007

CLERK OF THE SUPERIOR COURT
By   ORPHA CHAGOLLA
                        Deputy

Deborah Wilson
In Pro Persona
361 Garden Common
Livermore, California 94551
Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

**DEBORAH WILSON**

CASE NO: **V G 0 7 3 2 7 1 0 4**

v.

**COMPASS VISION, INC.**

**COMPLAINT FOR DAMAGES**
**Amount demanded exceeds $25,000**

And

**NATIONAL MEDICAL SERVICES, INC.**
**D/B/A NMS LABS**

**VIA FAX**

Plaintiff complains and for causes of action alleges as follows:

**First Cause of Action—Negligence**

1.      Plaintiff, Deborah Wilson, is an individual and is now, and at all times mentioned
in this complaint was, a resident of Alameda County, California.

2.      Defendant, Compass Vision, Inc. ("Compass") is a corporation with its principal
place of business in Oregon at SW Town Center Loop E, Wilsonville, ORE 97070. It has
transacted business in California, including the business that gives rise to the causes of
action at issue.

3.      Defendant Compass is a third party administrator ("TPA"), specializing, inter alia, in the
design, implementation, and management of drug and alcohol testing programs.

1

EXHIBIT A

4.    On information and belief defendant Compass contracted with the California State Board of Nursing through Maximus, Administrator of the California Nurses Recovery Program, to be the TPA administering the alcohol testing program for nurses, including plaintiff Wilson, in California, including Alameda County.

5.    Defendant National Medical Services, Inc. dba NMS Labs ("NMS") is a corporation with its principal place of business in Pennsylvania at 3701 Welsh Road, Willow Grove, PA 19090. NMS also has lab testing facilities and offices throughout the United States. It has transacted business in California, including the business that gives rise to the causes of action at issue.

6.    On information and belief defendant NMS through defendant Compass contracted with the California State Board of Nursing through Maximus to do EtG (ethyl glucuronide) testing of the nurses, including plaintiff Wilson.

## Operative Facts

7.    At all times relevant hereto, NMS provided to the Board the results of alcohol testing upon registered nurses as contracted through Compass.

8.    Because of the sensitive nature of their positions with respect to patient care, a registered nurse in California who has an admitted history of addiction is allowed to enter into Diversion Program Recovery Contracts with Maximus, by which they agree to submit to random observed urine analysis to document a drug-free condition in a known "zero-tolerance" environment.

9.    In 2003, after admitting to prescription pain killer dependency, Deborah Wilson signed a Recovery Contract with the Board submitting herself to future random testing for three years.

10.   In 2005 during which time she participated in the program and worked as a RN for laser treatments, Wilson adhered to all of the program conditions and did not drink alcoholic beverages.

2

11.     All of Wilson's evaluations by her supervisors while she was in the program rated the quality of her work as "Excellent" and she never was and never appeared to be impaired at work.

12.     "EtG" stands for ethyl glucuronide, a metabolite of alcohol, and was reported by Gregory Skipper, M.D. ("Dr. Skipper") and Friedrich Wurst, M.D., in November 2002 at an international meeting of the American Medical Society, to provide proof of alcohol consumption as much as 5 days after drinking an alcoholic beverage, well after the alcohol itself had been eliminated from the body.

13.     In 2003, because of these and other reportedly remarkable results (e.g., positive findings, confirmed by admissions by the tested individuals, after traditional urine tests had registered negative), EtG testing began in the United States.

14.     It is believed and therefore averred that Compass and NMS became leading proponents of EtG testing publishing and promoting that "EtG has emerged as the marker of choice for alcohol" and "that EtG is not detectable in the urine unless an alcoholic beverage has been consumed." The test was touted as the "gold standard".

15.     It is believed and therefore averred that based on such unequivocally conclusive statements and claims by the defendants, California instituted EtG testing and the State Board of Nursing through Maximus became a signatory to a service contract with Compass as its TPA, which in turn engaged NMS as its testing lab facilities for EtG testing programs.

16.     On information and belief NMS and Compass established a reporting limit or cutoff of 250 ng/mL, which eventually was changed to 500 ng/mL, at or over which EtG test results would be reported as "positive" for drinking alcohol.

17.     On or after May 16, 2005, despite maintaining that she had not drank an alcoholic beverage, Wilson suffered injury when she was suspended from work and missed two weeks as a result of having been reported by NMS and Compass as having tested positive for EtG

3

26.   Quoting Dr. Skipper, among others, the article includes:

> "Little advertised, though, is that EtG can detect alcohol even in people who didn't drink. Any trace of alcohol may register, even that ingested or inhaled through food, medicine, personal-care products or hand sanitizer."

> "The test 'can't distinguish between beer and Purell' hand sanitizer, says H. Westley Clark, director of the federal Substance Abuse and Mental Health Services Administration. . . 'When you're looking at loss of job, loss of child, loss of privileges, you want to make sure the test is right", he says..."

> "Use of this screen has gotten ahead of the science,' says Gregory Skipper..."

27.   Upon information and belief, representatives of Compass and NMS, continue to deny and

challenge these warnings insisting that the tests are accurate and reliable measurements, based on

alleged scientific research.

28.   On September 28, 2006, SAMHSA, a federal agency that is part of the U.S.

Department of Health and Human Resources, issued an Advisory, which on the first page

contained a "grey box" warning, as follows:

> "Currently, the use of an EtG test in determining abstinence lacks sufficient proven specificity for use as primary or sole evidence that an individual prohibited from drinking, in a criminal justice or a regulatory compliance context, has truly been drinking. Legal or disciplinary action based solely on a positive EtG, or other test discussed in this *Advisory* is inappropriate and scientifically unsupportable at this time. These tests should currently be considered as potential valuable clinical tools, but their use in forensic settings is premature."

29.   Defendants have refused to follow the SAMSHA Advisory and continue to utilize

an arbitrary cutoff, and support their "positive" findings to the Board (and other licensing

and law enforcement agencies) in the face of disciplinary action against the tested

individuals.

30.   Defendants, by promoting, advertising, marketing, selling, and/or contracting with the

licensing board, and/or designing, implementing, and managing the drug and alcohol testing

program, and/or collecting the urine samples and/or utilizing the EtG test to allegedly establish

5

that the plaintiff consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results.

31. Plaintiff, as a nurse, was an intended test subject and defendants knew that her license and occupation would be in jeopardy if she tested positive.

32. Plaintiff by entering into voluntary screening program, both for rehabilitative and occupational reasons, relied on the validity of the tests to which she subjected herself – with the goal that they could provide laboratory evidence of her abstinence.

33. Because of the obvious foreseeable serious and devastating consequences of reporting that the results were positive (within cutoffs established by the defendants), defendants had to exercise duty to use a reasonable degree of care to avoid erroneous test results to the foreseeable test subjects, including the plaintiff.

34. Instead, upon information and belief, defendants acted negligently and recklessly in:

a. Marketing their tests without conducting adequate scientific or medical studies;

b. Establishing cutoffs over which test results would be reported as "positive" that were arbitrary and scientifically unreliable and invalid;

c. Promoting the EtG test with unsupported and false statements that a positive EtG test would unequivocally establish that the subject individual had consumed alcoholic beverages;

d. Publishing warnings that the failure to conduct such a test would be negligence on the part of an employer or licensing board;

e. Falsely asserting that the EtG test was the "gold standard" in ferreting out former alcoholics or drug users who were resuming or beginning to engage in prohibited alcoholic consumption in occupations requiring a "zero tolerance";

6

f.      Falsely asserting that EtG is not detectable in the urine unless an alcoholic beverage has been consumed, thereby concealing that incidental or involuntary exposure or consumption of products containing alcohol could result in positive findings;

g.      Failing and refusing to re-evaluate and re-set cutoff limits at levels that were scientifically sound and reliable markers for detecting the prohibited activity of alcoholic beverage consumption, and excluding other causes for their results;

h.      Failing to heed the warnings or cautionary advisories issued by Dr. Skipper, SAHMSA and others – that the cutoff levels were unreliable and arbitrary, and that incidental use could trigger positive results at levels at or above the cutoffs – and, instead, denying publicly and maintaining the warnings were insufficient to discredit the EtG test and its cutoff limits;

i.      Failing to protect the plaintiff from foreseeable substantial harm in the form of disciplinary and punitive measures, when their EtG test systems were employed and relied upon for their accuracy and reliability.

35.     As a direct and proximate result of the defendants' negligence, she has suffered great, permanent and irreparable harm. These injuries include, but are not limited to: the future possible revocation of her license, loss of earnings and earning capacity, expenses associated with random EtG tests and other evaluations, other pecuniary losses flowing directly and consequentially from the EtG testing, humiliation, damage to her reputation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

36.     The aforesaid negligence and recklessness on the part of the defendants was outrageous in nature.

WHEREFORE, plaintiff demands judgment as set forth below.

7

### Second Cause of Action – Fraudulent Misrepresentation

37.     Plaintiff incorporates by reference paragraphs 1-36 as if set forth fully hereunder.

38.     It is believed and therefore averred that Defendants, for reasons of maintaining the profits they have reaped in a $4 Billion industry, have acted such as to filter out and ignore any oral statements and published findings, research, advisory warnings that draw into question the accuracy, efficacy and claimed foolproof results coming from the EtG test. This has been furthered by the following fraudulent activities:

a.     Upon information and belief, Defendant NMS created a web-site, which directs prospective customers and the general public to linked articles, sales and promotional materials and alleged scientific studies, which falsely represent that positive EtG results can only come from drinking alcohol and that their cutoff levels create the marker and approved standard for reporting such positive results. It is believed and therefore averred that similar misrepresentations have been made by both defendants in brochures, promotional conversations, advertisements and sponsored scientific studies;

b.     It is believed and therefore averred that defendants have delivered sworn testimony in licensing hearings that the EtG positive results such as had by plaintiff were only possible if the subject had been drinking alcohol.

c.     It is believed and therefore averred that both defendants continue to promote outdated articles supporting their false and fraudulent claims, ignoring and refusing to substitute them for later studies that called for higher cutoffs; warnings of positive findings by reason of incidental exposure or consumption of alcohol-containing products, such as hand sanitizers and other commonly-used products by nurses and consumers; and, called for testing companies and employers utilizing these tests to understand that any results like Wilson's were in the "gray area" and not proof of drinking alcoholic beverages.

8

39. It is believed and averred that, in addition to the claims made above, discovery will establish that the defendants' misrepresentations and omissions of material facts were committed knowingly and wantonly in disregard of the lives and livelihoods of countless individuals, including the plaintiff, through the suppression of information; the distortion of scientific research and studies; the false and misleading testimony and presentation of support for its EtG test to governmental bodies, professional societies and industrial organizations; false and deceptive advertising; false and deceptive published materials; the presentation of experts called to support their results in licensing hearings; the establishment of arbitrary and capricious cutoff levels; and, continued outdated advertising and sales materials in the face of research discrediting and/or raising serious questions about the validity of "positive" EtG results.

40. Said misrepresentations were calculated to maintain profitability and a captive market, despite the devastating consequences to the occupations and professions of hundreds of people who did not confess to drinking and who strenuously denied same.

41. Said misrepresentations and omissions of material facts were made recklessly, ignoring discrediting data, research and advice, and in total disregard of the impact on those positively-tested individuals, including plaintiff, whose results were not probative of drinking alcohol, but which were used to suspend or revoke licenses needed for gainful employment in their chosen professions or occupations.

42. Continuation of this pattern by Defendants is also a continuation of damages to plaintiff who would have succeeded in the program and not be facing revocation of her license if she was not tested for EtG.

43. It is believed and therefore averred that the aforesaid false representations about EtG made by defendants were justifiably relied upon by the California State Board of

9

Nursing on behalf of the nurses in its recovery programs including plaintiff Deborah Wilson, to implement EtG testing and to discipline nurses that tested "positive."

44.    In submitting to her voluntary agreement to random testing, plaintiff Wilson justifiably and reasonably relied that the testing, including the EtG test misrepresented by the defendants, to which her urine would be subjected, was with valid tests that would not produce "false positives" that could be interpreted to indicate that she had consumed alcoholic beverages in violation of her agreement, when she had in actuality adhered to her promise not to drink alcoholic beverages; and she justifiably and reasonably relied that she would not be subjected to professional discipline as a result of an invalid and arbitrary test result.

45.    Plaintiff alleges that as a proximate cause of defendants' fraudulent conduct, she has suffered, great, permanent and irreparable harm. These injuries include, but are not limited to: the future revocation of her license, loss of earnings and earning capacity, expenses associated with random EtG tests and other evaluations, other pecuniary losses flowing directly and consequentially from the EtG testing, humiliation, damage to her reputation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

46.    Defendants' conduct is alleged to be intentional, fraudulent, malicious and outrageous, entitling plaintiff to punitive damages.

WHEREFORE, plaintiff demands judgment as set forth below.

### Third Cause of Action– Negligent Misrepresentation

47.    Plaintiff incorporates by reference paragraphs 1-46 as if set forth fully hereunder.

48.    Defendants, their agents, employees and servants did negligently misrepresent material facts regarding their EtG testing including that:

10

a.    The EtG test would unequivocally establish that a positive result indicated that the subject individual had consumed alcoholic beverages;

b.    The cutoff or reporting limit, above which a "positive" result would occur was scientifically established after valid and reliable research;

c.    The failure to conduct such a test would be negligence on the part of the employer;

d.    The EtG test was the "gold standard" in ferreting out former alcoholics who were resuming prohibited alcoholic consumption in occupations requiring a "zero tolerance";

e.    Employees who voluntarily agreed to random testing could rely on the accuracy of the EtG test in protecting them against false positives;

f.    EtG is not detectable in the urine unless an alcoholic beverage has been consumed, thereby concealing that incidental or involuntary exposure or consumption of products containing alcohol could result in positive findings;

g.    The continued re-evaluation and re-setting of cutoff limits were scientifically sound and reliable markers for detecting the prohibited activity of alcoholic beverage consumption;

h.    Warnings or cautionary advisories issued by Dr. Skipper, SAMHSA and others -- that the cutoff levels were unreliable and arbitrary, and that incidental use could trigger positive results at or above the cutoffs – were insufficient to discredit the EtG test and its cutoff limits.

49.    The misrepresentations by defendants were made in false and misleading statements, oral and written, as well as through the omission of information known to discredit the EtG test to its customers, whose continued business supported a $4 Billion industry.

50.    Said misrepresentations and material omissions were calculated to increase their profits, retain the EtG test as the alleged "gold standard" in the detection of alcohol consumption by

11

tested individuals, and to suppress and attempt to refute the mounting scientific, medical and governmental advisories, warnings and published reports, and the misrepresentations were malicious and in total disregard of plaintiff, who subjected herself to the screening program, in justifiable reliance on the validity and truthful reporting and interpreting of the administered tests, aimed at supporting her abstinence in order to maintain her professional license and occupation.

51. Said misrepresentations and omissions of material facts were made recklessly, ignoring discrediting data, research and advice, and in total disregard of the impact on those positively-tested individuals, including plaintiff, whose results were not probative of drinking alcohol, but which were used to suspend or revoke licenses needed for gainful employment in their chosen professions or occupations.

52. It is believed and therefore averred that the aforesaid false representations about EtG made by defendants were justifiably relied upon by the California State Board of Nursing on behalf of the nurses in its recovery programs including plaintiff Deborah Wilson, to implement EtG testing and to discipline nurses that tested "positive."

53. In submitting to her voluntary agreement to random testing, plaintiff Wilson justifiably and reasonably relied that the testing, including the EtG test misrepresented by the defendants, to which her urine would be subjected, was with valid tests that would not produce "false positives" that could be interpreted to indicate that she had consumed alcoholic beverages in violation of her agreement, when she had in actuality adhered to her promise not to drink alcoholic beverages; and she justifiably and reasonably relied that she would not be subjected to professional discipline as a result of an invalid and arbitrary test result.

54. As a result of the defendants' negligent misrepresentations she has suffered, great, permanent and irreparable harm. These injuries include, but are not limited to: the possible future

12

revocation of her license, loss of earnings and earning capacity, expenses associated with random EtG tests and other evaluations, other pecuniary losses flowing directly and consequentially from the EtG testing, humiliation, damage to her reputation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

55.    Said misrepresentations were, therefore, outrageous in nature.


WHEREFORE, plaintiff demands judgment against defendants in an amount greater than $25,000 and each of them, as follows:

1. General damages according to proof;

2. Special damages according to proof;

3. Punitive Damages

4. Prejudgment interest according to law;

5. Costs of this action; and

6. Any other and further relief that the Court considers proper.


Dated:


*Deborah Wilson*

Deborah Wilson

13

## VERIFICATION

I, Deborah Wilson, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Livermore, California.


DATED: 5-15-07       _Deborah Wilson_

**Deborah Wilson**

# Exhibit B

MAY. 25. 2007  3:59PM       X SERVICES                                    NO. 7856   P. 2

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

NOTICE TO DEFENDANT: COMPASS VISION, INC.; and
(AVISO AL DEMANDADO): NATIONAL MEDICAL SERVICES, INC.,
d/b/a NMS LABS

YOU ARE BEING SUED BY PLAINTIFF: DEBORAH WILSON
(LO ESTA DEMANDANDO EL DEMANDANTE):

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 2 2007

CLERK OF THE SUPERIOR COURT
By __ORPHA CHAGOLLA__
                          Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/español), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/español, o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is:<br>(El nombre y dirección de la corte es): | Alameda Superior Court<br>5672 Stoneridge Dr.<br>Pleasanton, CA 94588 | CASE NUMBER:<br>(Número del Caso):<br>**VG07327104** |

**VIA FAX**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Deborah Wilson — In pro persona
361 Garden Common
Livermore, CA  94551

ORPHA CHAGOLLA

DATE: MAY 2 2 2007    PAT SWEETEN                  , Clerk, by  ORPHA CHAGOLLA  , Deputy
(Fecha)                EXECUTIVE OFFICER/CLERK (Secretario)                    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify):  Compass Vision, Inc.

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other (specify):

4. ☒ by personal delivery on (date):  5/29/07

                                                                      Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

## SUMMONS

Code of Civil Procedure §§ 417.20, 465

American LegalNet, Inc.
www.USCourtForms.com

**EXHIBIT B**

# Exhibit C

Exhibit C

MAY. 25. 2007  3:59PM    FOX SERVICES                NO. 7856   P. 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Deborah Wilson<br>361 Garden Common<br>Livermore, CA  94551<br><br>TELEPHONE NO.: 925-245-9228    FAX NO.:<br>ATTORNEY FOR (Name): In Pro Persona | FOR COURT USE ONLY<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>MAY 2 2 2007<br><br>CLERK OF THE SUPERIOR COURT<br>by   ORPHA CHAGOLLA<br>                              Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 5672 Stoneridge Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Pleasanton,  CA  94588
BRANCH NAME:

CASE NAME:
Deborah Wilson v. Compass Vision, Inc. et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>VG07327104 |
|---|---|---|
| [✓] Unlimited   [ ] Limited<br>(Amount        (Amount<br>demanded       demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[✓] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive

4. Number of causes of action (specify):

5. This case [✓] is  [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
Deborah Wilson
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**VIA FAX**

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 3.220, 3.400–3.403;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov |

EXHIBIT C

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

### To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

### To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or*
    *Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation
(Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally*
    *complex case type listed above)*
    (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-*
      *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)*
    (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION PACKAGE
#### Effective April 15, 2005

### Instructions to Plaintiff / Cross-Complainant

> In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
> is required to serve a copy of this ADR information package on each defendant.

### California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the
complaint, an Alternative Dispute Resolution (ADR) information package that
includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages
of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs
Act (DRPA), information about the availability of local dispute resolution
programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use
of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants must serve a
copy of the ADR information package on any new parties to the action
along with the cross-complaint.**

Rev 4/05

## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Rev 4/05

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

Rev 4/05

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.


## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

   You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

   If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators."**

- **Automotive Repair, Smog Check:** The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Attorney Fees:** The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

*Rev 4/03*

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940   fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teen Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377   fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351  fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

#### Appointment of Arbitrator (must be appointed within 30 days after referral per CRC 1605).
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per CRC 1605a)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

#### Assignment of Case (CRC 1605a(4))
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

#### Hearings (CRC 1611)
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

#### Award of Arbitrator (CRC 1615b & c)
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

#### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. (CRC 1616 & Local Rule 6.4)

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified (CRC 1615c & Local Rule 6 6)

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. (Local Rule 6.6)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| Allen E. Broussard Justice Center 600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse 2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice 2233 Shoreline Drive, Alameda, CA 94501 |
|---|---|---|
| Fremont Hall of Justice 39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice 5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse 661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice 24405 Amador Street, Hayward, CA 94544 | Rane C. Davidson Courthouse 1225 Fallon Street, Oakland, CA 94612 | |

_____
Plaintiff

vs.

_____
Defendant

Case No.: _____

## STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05