JOSHUA A. RIDLESS (SBN No. 195413)
PAUL A. MOORE III (SBN No. 241157)
LAW OFFICES OF JOSHUA A. RIDLESS
244 California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 614-2600
Facsimile: (415) 480-1398

*Attorneys for Plaintiff Deborah Wilson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WILSON,<br><br>          Plaintiff,<br><br>   v.<br><br>COMPASS VISION, INC.; and NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS,<br><br>          Respondent. | Case No.:  3:07-cv-03431 BZ<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NATIONAL MEDICAL SERVICES d/b/a NMS LAB'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Fed.R.Civ.R. 12 (b)(6)]<br><br>**Complaint Filed:   May 22, 2007**<br><br>**Date:      November 28, 2007**<br>**Time:      10:00 a.m.**<br>**Courtroom:  G**<br>**Judge:    Hon. Bernard Zimmerman**<br>**Trial Date:  Not Set** |

1

## TABLE OF CONTENTS

2   PRELIMINARY STATEMENT…………..…………………………………2

3   STATEMENT OF FACTS…………………………………………......3

4        I.  Procedural…………………………………………………....3

5        II. Pertinent Allegations of the Complaint…………………………………3

6   ARGUMENT……………………………………………...........4

7        I.  Standard of Review………………………………………….4

8        II. The Complaint Alleges a Viable Claim for Negligence……...………..4

9        III.  Plaintiff is Not Required to Exhaust Administrative
10       Remedies Prior to Filing Suit..………………………………….………..8

11       IV.  The Defendant's Conduct Justifies the Allegations of
         Recklessness Allowing Plaintiff's Claim for Punitive Damages………..9

12       V. The Complaint Alleges a Viable Claim for Emotional Damages…...10

13   CONCLUSION……………………………………………….......12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

<u>TABLE OF AUTHORITIES</u>

**State Cases**

*Althaus v. Cohen*
562 Pa. 547, 553, 756 A.2d 1166 (Pa. 2000).…………………………...………..7

*Bollengier v. Doctors Med. Ctr.*
222 Cal. App.3d 1115, 272 Cal. Rep. 273 (Cal. App. 5 Dist. 1990)………..……………...…9

*Duncan v. Afton, Inc.*
991 P.2d 739 (Wyo. 1999) ……………………………………………...........8

*Eight Unnamed Physicians v. Med Exec. Comm. Of the Med Staff of Wash.*
*Township Hospital,* 150 Cal. App. 4th 503, 59 Cal. Rep.3d 100 (1 Dist. 2007)………………8

*Elliott v. Laboratory Specialists, Inc.*
588 So.2d 175 (La. Ct. App. 5th Cir. 1991) …..………………………………………8

*Felton v. Schaeffer*
229 Cal. App.3rd 229, 279 Cal. Rep. 713 (Cal. App. 4 Dist.1990)………………………....... 5

*Kaiser Foundation Hospitals v. Sacramento County Sup. Ct,*
128 Cal. App.4th 85, 26 Cal. Rep.3d 714 (Cal. App. 3 Dist. 2005)………………………………9

*Keene v. Wiggin*
69 Cal. App.3d 308, 138 Cal. Rep. 3 (Cal. App. 4 Dist. 1977)....……………..………………5

*Mero v. Sadoff*
31 Cal. App.4th 1466, 37 Cal. Rep.2d 769 (Cal. App. 2 Dist., 1995)…………………………5

*Rowland v. Christian*
69 Cal.2d 108, 70 Cal. Rep. 97 (Cal. 1968) ...…………………...........................………5

*Sharpe v. St. Luke's Hospital*
573 Pa. 90, 821 A.2d 1215 (Pa. 2003) ...……………………………………....…6, 7, 9, 10, 11

*Stinson v. Physicians Immediate Care Ltd.*
269 Ill. App.3d 659, 646 N.E. 2d 930 (Ill. App. 2 Dist. 1995) ……………………………7

*Westlake Community Hosp. v. Superior Court*
17 Cal.3d 465, 131 Cal. Rep. 90 (Cal. 1976)………………………...………………..8

**Journals**

*30 Rutgers L.J.* 473 1999 ………………………………………........................5

ii

**PRELIMINARY STATEMENT**

Plaintiff, Deborah Wilson goes forward against defendant National Medical Services, Inc. d/b/a NMS Labs ("NMS"), solely based on her claim of negligence. She hereby withdraws the claims of fraudulent misrepresentation and negligent misrepresentation pled in her Complaint. The negligence claim made on behalf of the plaintiff is new and unique. It is factually distinguishable from any claim made in the cases cited by defendant in support of its position. It is respectfully submitted to this honorable Court that the defendant has misstated in its motion, and perhaps misunderstood, the gravamen of plaintiff's claim.

The instant claim is based on the defendant, NMS, introducing and promoting a new test into the marketplace of employment drug testing, which was not capable of being used for the purpose for which it was introduced and promoted. The EtG test is a "false positive" trap for the people intended to be tested with it. The defendant carelessly introduced EtG testing as a new "gold standard," to determine whether professionals in recovery programs had drank alcoholic beverages in violation of their agreement with state licensing boards. The defendant promoted, marketed, sold, established arbitrary invalid cut-offs and wrongly interpreted this faulty test. Contrary to the defendant's assertion, the plaintiff's allegations go far beyond the "sum total" "that it:  (i) has lab testing facilities or offices throughout the United States; (ii) performed or administered alcohol and drug screening programs throughout California; (iii) performed EtG testing, or administered such testing, upon nurses, including plaintiff; and (iv) provided to the Nursing Board the results of alcohol testing of nurses…" (Memorandum of Points and Authorities In Support of Defendant National Medical Services, Inc. d/b/a NMS Labs' Motion to Dismiss Plaintiff's Complaint at pp. 1-2.)

A review of the applicable law supports a finding that the defendant owed a duty to use reasonable care to avoid false positive tests to the plaintiff who defendant knew would suffer, not only foreseeable, but inevitable damage to her reputation and livelihood if she tested positive.

///

///

///

### STATEMENT OF FACTS

**I.   PROCEDURAL**

Plaintiff originally filed her Complaint in *pro per* in state court in California. The action was removed to this Court by defendants.

**II.   PERTINENT ALLEGATIONS OF THE COMPLAINT**

NMS, a drug testing laboratory, became a leading proponent of urine testing for ethyl glucuronide as proof of the drinking of alcoholic beverages, touting the test as the "gold standard". NMS, without conducting adequate scientific or medical studies, negligently claimed and continues to claim that EtG is not detectable in urine, at cut-offs it set, unless an alcoholic beverage has been consumed. The set cut-offs are arbitrary. The California Board of Nursing, on behalf of the nurses in its Recovery Program, including plaintiff Eva Quisenberry, relied on NMS' claims as to the validity of the EtG test in instituting EtG testing for nurses in its Recovery Program. (Complaint at ¶¶ 5-7, 14-16, 23 and 34.)

NMS performed the EtG testing and reported results of EtG alcohol testing upon registered nurses to the California Board of Nursing. This included plaintiff's "positive" results from her urine samples of May and June 2005. NMS claimed that a result at or above the cut-off was proof that the nurse tested drank an alcoholic beverage in violation of their recovery program. (Complaint at ¶¶ 7 and 17-18.)  NMS knew that these nurses would be in jeopardy of losing their jobs and would suffer damage to their credibility and reputations if they were reported as testing positive. (Complaint at ¶¶ 31, 33, 34 and 35.)

Deborah Wilson, who did not drink an alcoholic beverage, was terminated from her diversion program and faces probation and the future revocation of her license because of  two "positive" EtG tests on her record that were reported by the defendant in May and June of 2005. (Complaint at ¶¶ 17-22.)

On September 28, 2006, after hearings, the Substance Abuse and Mental Health Services Administration ("SAMHSA") advised that EtG testing, for use as proof that an individual prohibited from drinking had truly been drinking, was scientifically unsupportable and should not be used for disciplinary action. Despite this advisory and other warnings and information on the

1   invalidity of the EtG test, NMS continued and continues to promote its use to detect the drinking

2   of alcohol in those who are in recovery. (Complaint at ¶¶ 28-29.)

3        As a result of the wrongful actions of NMS, in addition to suffering monetary loss,

4   plaintiff Deborah Wilson suffered damage to her reputation from the suspension of her nursing

5   license. Deborah Wilson was labeled a liar and alcoholic as a result of false positive EtG tests

6   with consequent and foreseeable humiliation and emotional distress. (Complaint at ¶ 35.)

7        Plaintiff alleges that the actions of NMS were reckless and outrageous. NMS' actions

8   concerning EtG and its sale of the testing program, as giving reliable and absolute proof that a

9   person had drank alcoholic beverages, were in reckless disregard of the lack of research done and

10   the damaging information that came to light about the test. (Complaint at ¶¶ 23-30, 34 and 36.)

11   <u>**ARGUMENT**</u>

12   **I.**   <u>**STANDARD OF REVIEW**</u>

13        Plaintiff agrees with the legal standard of review as stated by the defendant.

14   **II.**   <u>**THE COMPLAINT ALLEGES A VIABLE CLAIM FOR NEGLIGENCE**</u>

15        As defendant NMS admits, whether a testing laboratory owes a duty to a tested employee to

16   use reasonable care to avoid false positive results is a question of first impression in California.

17   Although California courts have not ruled on the issue, courts in many other states (for example,

18   Pennsylvania, Illinois, Wyoming, Oregon, and Louisiana) have found that there is a duty of care in

19   connection with urinalysis. Those courts specifically found that the imposition of a duty of

20   reasonable care is appropriate. They reason that the injuries caused by negligent conduct in

21   connection with urinalysis is foreseeable to companies who undertake to be involved in urinalysis

22   for profit. It is respectfully submitted that this Honorable Court, in light of the reasonable analysis

23   made by the courts of these states, should find that defendant NMS had a duty of care to plaintiff

24   Deborah Wilson, under the circumstances as alleged in Plaintiff's Complaint. With that finding, it

25   is submitted that plaintiff has properly stated a negligence claim upon which relief can be granted.

26        The crux of plaintiff's negligence case, as pled, is that the defendant rushed an unfit drug

27   test into the marketplace. The "duty to use a reasonable degree of care to avoid erroneous test

28   results" is framed as having been breached by the defendant "promoting, advertising, marketing,

selling, contracting with licensing boards and professional associations and utilizing" a faulty and arbitrary test. This unique claim distinguishes the case factually from the factual scenario of the cases cited by the defendant. (Complaint at ¶ 30.)

As stated in the often cited seminal California Supreme Court case of *Rowland v Christian,* 69 Cal.2d 108, 112 (1968)*,* under California law, by statute and common law, there exists the fundamental principle that, "[a]ll persons are required to use ordinary care to prevent others being injured as the result of their conduct." There is thus a presumption of a duty of care. To depart from this principle, California courts use a balancing of factors. It is respectfully submitted that under any analysis,[1] there is no reason to depart from the presumed imposition of a duty of care in California. The virtual certainty of injury, to the testing nurse or doctor from a false positive drug test, clearly outweighs the utility of protecting the introduction and use of a flawed test such as EtG.

The defendant attempts to equate the instant case with that of  the absence of a professional duty of care, where there is no physician – patient relationship. The decisions in *Mero v. Sadoff,* 31 Cal. App.4th 1466 (1995), *Keene v Wiggins,* 69 Cal. App.3d 308 (1977), and *Felton v. Schaeffer,* 229 Cal. App.3rd 229 (1990), the cases cited by the defendant, are based on the necessity of a physician-patient relationship for the imposition of duty of care on a physician evaluating an individual's medical condition. The two seminal cases held that a person examined on behalf of and for the benefit of a worker's compensation insurer (*Keene*) or a prospective employer (*Felton*) could not sue the physician for negligence in diagnosis. *Keene* (*Keene* at 314), on which *Mero* (*Mero* at 1471) relied, stressed that it was unforeseeable that such an examinee would rely on the compensation doctor's report to the prospective employer. *Felton* largely followed *Keene*. (*See Felton* at 234-238.)

---

[1] See also *30 Rutgers L.J. 473 1999,* "Liability of a Laboratory for Negligent Employment or Pre-employment Drug Testing", where the authors submit that under any proper duty analysis, including foreseeability, risk-duty analysis and the balance of factors test, a duty of those involved in drug testing of employees would be found and cite that cases where courts have made an analysis have uniformly found such a duty to exist.

It is respectfully submitted that the scope and objects of a clinical laboratory's duties of care are by no means necessarily the same. With respect to a laboratory that undertakes to test an employee for alcohol or drugs, whose present employment will be compromised by an affirmative finding, the foreseeability of the consequences point predominantly if not entirely in favor of the recognition of a duty of care when examining the factors that are traditionally relevant to such an analysis in California. (*See Rowland*, supra at 112-113.)  This is even more the case where the laboratory introduces and promotes a new test that is scientifically unfit for the purpose for which it was promoted.

Plaintiff submits that a proper duty analysis was done by the Pennsylvania Supreme Court in *Sharpe v. St. Luke's Hospital,* 573 Pa. 90, 821 A.2d 1215 (2003), a central and crucial case in the employment drug testing arena. The *Sharpe* Court analyzed whether a duty should be recognized using a balance of factors analysis. (*Id*. at 1219.)

The Pennsylvania Supreme Court specifically held in *Sharpe* that a hospital owes a duty of reasonable care with regard to collection and handling of urine specimens for employment-related drug testing. This decision reversed the lower court which upheld the trial court's finding of no duty. The Pennsylvania Supreme Court, in so holding, quoted Pennsylvania Superior Court President Judge McEwen's dissent in the lower court decision, that a duty should be imposed upon any "hospital or *laboratory* involved in any stage of drug testing to adhere to a standard of reasonable and prudent conduct to prevent an undue risk of harm from false positive test results." (*Sharpe* at 1218.) (emphasis added)  The Court further quoted approvingly, that in employment-related drug testing "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result." (*Sharpe* at 1220.)

As the *Sharpe* Court noted in following the lead of Judge McEwen, "President Judge McEwen also found it critical that Sharpe had already attained employment…for purposes of imposing a duty of reasonable care, given the resultant loss of employment and the stigma inevitably attaching to her subsequent attempts to obtain employment." (*Sharpe* at 1218.)  The *Sharpe* duty analysis centered on the "substantial public interest" in avoiding the "potential

- 6 -

1  ramifications of false positives" (*Sharpe* at 1221.)  It is respectfully submitted to this honorable

2  Court that the same reasoning is persuasive in the recognition of a duty here. "The risk of harm in

3  our society to an individual because of a false-positive drug test is so significant that failure to

4  find protection under our law would be a step backwards for the protection of the individual."

5  (*Sharpe* at 1221.)

6      In *Althaus v. Cohen*, the Court held that the concept of duty is rooted in public policy, and

7  the determination of whether a duty should be imposed upon an alleged tortfeasor involves a

8  balancing of the following factors:(1) the relationship between the parties; (2) the social utility of

9  the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4)

10  the consequences of imposing a duty upon the actor; and (5) the overall public interest in the

11  proposed solution. *Althaus v. Cohen,* 562 Pa. 547, 553, 756 A.2d 1166, 1169 (Pa. 2000).

12      Defendant NMS, while not collecting the urine, did more than perform the testing and

13  report the results. NMS promoted the new EtG test as foolproof at arbitrary cutoffs that it

14  established when the test lacked sufficient proven specificity for the role for which it was being

15  promoted. The public policy justification for recognizing a duty here is thus much stronger than

16  with the hospital in *Sharpe*. It is respectfully submitted the defendant owed a duty to the plaintiff

17  to use reasonable care to prevent an undue risk of harm from a false positive test result.

18      In addition to *Sharpe,* other state courts that have found a duty on less persuasive facts

19  than in the instant case, include Illinois, Wyoming and Louisiana. In Illinois: *Stinson v.*

20  *Physicians Immediate Care Ltd.,* 269 Ill. App.3d 659, 646 N.E.2d 930, 207 Ill. Dec. 96 (Ill. App.

21  Ct., 1995), a duty was found where the plaintiff sued the laboratory that had "collected the

22  sample, performed the drug testing, and reported the results to the employer." The *Stinson* Court,

23  in analyzing whether there was a duty, found "[t]here is a close relationship between a plaintiff

24  and a defendant which has a contract with the plaintiff's employer if it is reasonably foreseeable

25  that the plaintiff will be harmed if the defendant negligently reports test results to the employer."

26  (*Id.* at 933.)

27      In Wyoming: *Duncan v. Afton Inc*., 991 P.2d 739 (Wyo. 1999), where the Wyoming

28  Supreme Court, using a balance of factors test, held that a company, solely collecting urine for

1   the standard alcohol test, owed a duty of care to the employee, (not its own employee). The

2   *Duncan* Court held that, "[t]he positive consequences to the community in protecting employees'

3   interests are not outweighed by society's interest in detecting substance abuse." (*Id*. at 746.)

4           In Louisiana: *Elliott v. Laboratory Specialists, Inc.,* 588 So.2d 175 (La. Ct. App.,1991), in

5   holding that a drug testing laboratory had a duty to the tested employee to properly perform a test

6   for marijuana that Court stated:

7               "…to suggest that (the laboratory) does not owe plaintiff a duty to analyze
                his body fluid in a scientifically reasonable manner is an abuse of
8               fundamental fairness and justice…the risk of harm in our society to an
                individual because of a false-positive drug test is so significant that any
9               individual wrongfully accused of drug usage by his employer is within the
                scope of protection under the law.
10

11   (*Id*. at 176.)

12          It is respectfully submitted that under traditional California duty analysis, and as

13   demonstrated by the sound reasoning of the cases from other jurisdictions cited, this Honorable

14   Court should deny the motion to dismiss concerning plaintiff's negligence claim against

15   defendant NMS.

16   **III.    PLAINTIFF IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE**

17   **REMEDIES PRIOR TO FILING SUIT**

18          Plaintiff is at a loss at understanding any justification for this alleged basis for dismissal.

19   Defendant cites no controlling case law or statutory authority requiring remedies to be exhausted

20   prior to suing a Third Party Administrator; for indeed none exist. *Eight Unnamed Physicians v.*

21   *Med Exec. Comm. Of the Med Staff of Wash. Township Hospital.,* 150 Cal. App.4th 503, at 510-

22   511, cited by defendant, clearly explains that the Exhaustion of Administrative Remedies

23   Doctrine concerns suit against an organization of which the plaintiff is a member.

24              It is the general and well established jurisdictional rule that a plaintiff who
                seeks judicial relief against an organization of which he is a member must
25              first invoke and exhaust the remedies provided by that organization
                applicable to his grievance.' "
26

27   *Westlake Community Hosp. v. Superior Court* 17 Cal.3d 465, 474–475 (131 Cal. Rep. 90,

28   551 P.2d 410) (1976).

Moreover, even if the doctrine was applicable, it does not apply if no administrative remedy is available. (*Id.* at 511). Two courts have held that the exhaustion requirement does not apply if no administrative remedy is available. (*See Kaiser Foundation Hospitals v. Sacrament County Superior Court,* 128 Cal. App.4th 85, 101*, 26 Cal. Rep.3d 714 (Cal. App.3 Dist., 2005); Bollengier v. Doctors Med. Ctr.,* 222 Cal. App.3d 1115, 1126*, 272 Cal. Rep. 273 (Cal. App.5 Dist., 1990.*)

Plaintiff is not a member or employee of the defendant. She has no administrative course available against the defendant to seek damages for her having tested "positive" for the faulty EtG test, negligently promoted by, and used on her by the defendant. The law cited by the defendant may limit court action against the Nursing Board, but not against a private party. Defendant's motion that the plaintiff's claims be dismissed for the failure to exhaust administrative remedies should therefore be denied.

## IV.    THE DEFENDANT'S CONDUCT JUSTIFIES THE ALLEGATIONS OF RECKLESSNESS ALLOWING PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff does not challenge the law cited by the defendant on this issue. Plaintiff asserts that the facts as pled in the Complaint, if proved, would allow a finding by a jury that NMS acted with reckless indifference to the rights of the nurses undergoing EtG testing, including the plaintiff. NMS did not only perform and report the EtG testing of Deborah Wilson, NMS promoted the new test with claims it should have known were unsubstantiated and unsupportable by the meager research that had been done. Thus NMS recklessly placed Deborah Wilson into the position of unfairly losing her livelihood and having her reputation besmirched. The conduct of NMS was more serious and encompassing than the mere commission of negligence.

Here, as recognized by Pennsylvania's Supreme Court in *Sharpe*: "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result." *(Sharpe* at 1220.)  NMS, as a testing laboratory, acts as a professional in employment drug testing. The defendant was thus well aware

of the risk to nurses who underwent EtG testing, including the plaintiff.  Plaintiff submits that a jury could find NMS' actions towards Deborah Wilson wanton and outrageous. Not only did NMS recklessly promote EtG as being capable of determining whether a nurse had drank alcoholic beverages, the defendant also disregarded abundant literature in the field concerning the test's invalidity. Further, a jury could find that the defendant's motive for looking the other way, was solely profits. Defendant NMS' motion to dismiss the punitive damages claims of the Complaint should therefore be denied.

## V.    THE COMPLAINT ALLEGES A VIABLE CLAIM FOR EMOTIONAL DAMAGES

Plaintiff's claim for damages due to defendant NMS' negligent conduct is stated in the Complaint:

> As a direct and proximate result of the defendants' negligence, she has suffered great, permanent and irreparable harm. These injuries include, but are not limited to: the future possible revocation of her license, loss of earnings and earning capacity, expenses associated with random EtG tests and other evaluations, other pecuniary losses flowing directly and consequentially from the EtG testing, humiliation, damage to her reputation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

(Complaint at ¶ 35.)

The emotional damages claimed are not incident to her economic loss.  They are the foreseeable consequence from her being labeled as a drug addict and liar as a result of the false positive EtG alcohol test, when she was truthfully maintaining that she was in recovery. The implication that she would lie about her recovery was humiliating, reasonably and foreseeably causing her anxiety and emotional distress. The stain on her license and its possible revocation damaged her reputation. The invalid test caused a real and justified apprehension that she would no longer be able to practice her chosen profession.

Since there is no controlling precedent in California, plaintiff respectfully submits the persuasiveness of  the Pennsylvania Supreme Court, who in recognizing a duty to an employee undergoing drug testing, also recognized that damage to reputation and economic loss was recoverable, despite the absence of any physical injury. That Court noted in its opinion: "Sharpe

1   averred direct and immediate harm to both her reputation and economic status resulting from the

2   termination of her employment."[2] (*Sharpe* at 1217.)   The Court also quoted President Judge

3   McEwen, that the need to recognize a duty was due to "the loss of employment and the *stigma*

4   *inevitably attaching* to her subsequent attempts to obtain employment." (*Sharpe* at ) (emphasis

5   supplied.)

6          It would not be logical to recognize a duty due to an inevitable injury, and then not let the

7   plaintiff recover for that injury. NMS, by negligently promoting a faulty test, caused plaintiff

8   Deborah Wilson to be to be stigmatized as an incorrigible drug addict, unfit to practice nursing.

9   NMS should therefore be held accountable for the injuries flowing from her loss of reputation

10  and stigmatization, including her emotional injuries. Just as there is no requirement for proof of

11  physical injury to recover her inevitable economic loss, there should be no requirement of

12  physical injury to recover damages for her inevitable loss of reputation and foreseeable emotional

13  injury. Defendant NMS' motion to dismiss plaintiff's claims for emotional damages should

14  therefore be denied.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  _____

25  [2]  The Court also recognized that the only still active claim was for negligence. "Although Sharpe also asserted

26  claims of defamation, fraudulent misrepresentation and breach of contract, she voluntarily withdrew those claims
    before the trial court. Moreover, while Sharpe did not withdraw her claim for deliberate and reckless misconduct, the

27  trial court and the Superior Court engaged in no discussion on that count. Nor do the parties advance any
    argumentation along these lines." (Sharpe at 1217.)

28

1

## <u>CONCLUSION</u>

For all the foregoing reasons set forth above, Plaintiff respectfully requests that this Honorable Court deny the Motion of NMS to Dismiss Plaintiff's Complaint.


DATED:  October 24, 2007

Respectfully Submitted,

By: _____
                    Joshua A. Ridless

Joshua A. Ridless
Paul A. Moore III
LAW OFFICES OF JOSHUA A. RIDLESS
244 California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 614-2600
Facsimile: (415) 480-1398

*Attorneys for Plaintiff Deborah Wilson*

MEMO P&A OPP TO DEFENDANT'S MOT TO DISMISS
*Wilson v. Compass Vision, et al.,* Case No. 3:07-cv-03431 BZ