JOSHUA A. RIDLESS (SBN No. 195413)
PAUL A. MOORE III (SBN No. 241157)
LAW OFFICES OF JOSHUA A. RIDLESS
244 California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 614-2600
Facsimile: (415) 480-1398

*Attorneys for Plaintiff Deborah Wilson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WILSON,<br><br>   Plaintiff,<br><br>v.<br><br>COMPASS VISION, INC.; and NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS,<br><br>   Respondent. | Case No.: 3:07-cv-03431 BZ<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COMPASS VISION, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Fed.R.Civ.R. 12 (b)(6)]<br><br>**Complaint Filed: May 22, 2007**<br><br>**Date:** **November 28, 2007**<br>**Time:** **10:00 a.m.**<br>**Courtroom:** **G**<br>**Judge:** **Hon. Bernard Zimmerman**<br>**Trial Date:** **Not Set** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………..…………………………………………2

STATEMENT OF FACTS……………………………………………………….....…3

    I. Procedural………………………………………………………………….....3

    II. Pertinent Allegations of the Complaint………………………………………..3

ARGUMENT……………………………………………………………………............4

    I. Standard of Review…………………………………………………….....…4

    II. The Complaint Alleges a Viable Claim for Negligence……...………..…4

    III. Plaintiff is Not Required to Exhaust Administrative
    Remedies Prior to Filing Suit...……………………………………...….….…9

    IV. The Defendant's Conduct Justifies the Allegations of
    Recklessness Allowing Plaintiff's Claim for Punitive Damages……….10

    V. The Complaint Alleges a Viable Claim for Emotional Damages...….10

CONCLUSION…………………………………………………………………….....12

# TABLE OF AUTHORITIES

**State Cases**

*Althaus v. Cohen*
562 Pa. 547, 553, 756 A.2d 1166 (Pa. 2000)……………………………………..………..7

*Bollengier v. Doctors Med. Ctr.*
222 Cal. App.3d 1115, 272 Cal. Rep. 273 (Cal. App. 5 Dist. 1990)………..……………....…9

*Duncan v. Afton, Inc.*
991 P.2d 739 (Wyo. 1999) ……………………………………………………………..............8

*Eight Unnamed Physicians v. Med Exec. Comm. Of the Med Staff of Wash.*
*Township Hospital,* 150 Cal. App. 4th 503, 59 Cal. Rep.3d 100 (1 Dist. 2007)…..……………9

*Elliott v. Laboratory Specialists, Inc.*
588 So.2d 175 (La. Ct. App. 5th Cir. 1991) ….………………………………………………8

*Felton v. Schaeffer*
229 Cal. App.3rd 229, 279 Cal. Rep. 713 (Cal. App. 4 Dist.1990)…………………………........5

*Kaiser Foundation Hospitals v. Sacramento County Sup. Ct,*
128 Cal. App.4th 85, 26 Cal. Rep.3d 714 (Cal. App. 3 Dist. 2005)………………………….9

*Keene v. Wiggin*
69 Cal. App.3d 308, 138 Cal. Rep. 3 (Cal. App. 4 Dist. 1977)..……………………………..6

*Rowland v. Christian*
69 Cal.2d 108, 70 Cal. Rep. 97 (Cal. 1968) ...……….................................................................5, 6

*Sharpe v. St. Luke's Hospital*
573 Pa. 90, 821 A.2d 1215 (Pa. 2003) .……………………………………………..6, 7, 8, 10, 11

*Stinson v. Physicians Immediate Care Ltd.*
269 Ill. App.3d 659, 646 N.E. 2d 930 (Ill. App. 2 Dist. 1995) ……………………………..…8

*Westlake Community Hosp. v. Superior Court*
17 Cal.3d 465, 131 Cal. Rep. 90 (Cal. 1976)……………………………...……………..9

**Journals**

*30 Rutgers L.J.* 473 1999 …………………………………………………………................5

**PRELIMINARY STATEMENT**

Plaintiff, Deborah Wilson goes forward against defendant Compass Vision, Inc. ("Compass Vision"), solely based on her claim of negligence. She hereby withdraws the claims of fraudulent misrepresentation and negligent misrepresentation pled in her Complaint. The negligence claim made on behalf of the plaintiff is new and unique. It is factually distinguishable from any claim made in the cases cited by defendant in support of its position. It is respectfully submitted to this honorable Court that the defendant has misstated in its motion, and perhaps misunderstood, the gravamen of plaintiff's claim.

The instant claim is based on the defendant, Compass Vision, introducing and promoting a new test into the marketplace of employment drug testing, which was not capable of being used for the purpose for which it was introduced and promoted. The EtG test is a "false positive" trap for the people intended to be tested with it. The defendant carelessly introduced EtG testing as a new "gold standard," to determine whether professionals in recovery programs had drank alcoholic beverages in violation of their agreement with state licensing boards. The defendant promoted, marketed, sold, established arbitrary invalid cut-offs and wrongly interpreted this faulty test. Contrary to the defendant's assertion, the plaintiff's claim is based on far more than "material allegations" that: "(1) Compass Vision is a third party administrator ("TPA") specializing in the design, implementation and management of drug and alcohol testing programs, (2) Compass Vision contracted with the California State Board of Nursing to serve as the TPA of the alcohol testing program for California nurses, including Plaintiff, (3) Compass Vision promoted EtG testing as the "gold standard" for alcohol detection, and (4) Compass Vision established a reporting limit or cut-off of 250 ng/mL at or over which EtG test results would be reported as "positive" for drinking alcohol." (Memorandum of Points and Authorities In Support of Compass Vision, Inc.'s Motion to Dismiss for Failure to State A Claim Upon Which Relief Can Be Granted, pp. 1-2.)

A review of the applicable law supports a finding that the defendant owed a duty to use reasonable care to avoid false positive tests to the plaintiff who defendant knew would suffer, not only foreseeable, but inevitable damage to her reputation and livelihood, if she tested positive.

# STATEMENT OF FACTS

## I. PROCEDURAL

Plaintiff originally filed her Complaint in *pro per* in state court in California. The action was removed to this Court by defendants.

## II. PERTINENT ALLEGATIONS OF THE COMPLAINT

Compass Vision is a third party administrator ("TPA"), specializing, inter alia, in the design, implementation, and management of drug and alcohol testing programs, including the collection of the urine samples for testing. As a TPA, Compass Vision contracts its services to various state and municipal agencies, as well as state licensure boards. Compass Vision provided TPA services to the California State Board of Nursing ("Board"). The Board administers, inter alia, the licensing privileges of registered nurses. Both NMS, the defendant laboratory, and Compass Vision established the cut-offs and reported the results for plaintiff's "positive" EtG testing. (Complaint at ¶¶ 3, 4, 16-18 and 30.)

Compass Vision became a leading proponent of urine testing for ethyl glucuronide as proof of the drinking of alcoholic beverages, touting the test as the "gold standard". Compass Vision, without conducting adequate scientific or medical studies, negligently claimed and continues to claim that EtG is not detectable in urine, at cut-offs it set, unless an alcoholic beverage has been consumed. The set cut-offs are arbitrary. Compass Vision promoted and sold EtG testing to the Board in order to get the test implemented in the nursing program. The Board, on behalf of the nurses in its Recovery Program including plaintiff Deborah Wilson, relied on Compass Vision's claims as to the validity of the EtG test in instituting EtG testing for nurses in its Recovery Program. (Complaint at ¶¶14, 15, 23 and 34.)

When Compass Vision promoted the EtG test to the Board, it was with the intention and knowledge that nurses in the testing program, like plaintiff, would be tested. Compass Vision knew that these nurses, who relied on the validity of the tests to which they were submitting, would be in jeopardy of losing their jobs, and would suffer damage to their credibility and reputations, if they were reported as testing positive. (Complaint at ¶¶ 31, and 33-34.)

1    Deborah Wilson, who did not drink an alcoholic beverage, was terminated from her
2 diversion program and faces probation and the future revocation of her license because of two
3 "positive" EtG tests on her record that were reported by the defendant in May and June of 2005.
4 (Complaint at ¶¶ 17-22.)

5    On September 28, 2006, after hearings, the Substance Abuse and Mental Health Services
6 Administration ("SAMHSA") advised that EtG testing, for use as proof that an individual
7 prohibited from drinking had truly been drinking, was scientifically unsupportable and should not
8 be used for disciplinary action. Despite this advisory and other warnings and information on the
9 invalidity of the EtG test, Compass Vision continued and continues to promote its use to detect
10 the drinking of alcohol in those who are in recovery. (Complaint at ¶¶ 28-29.).

11    As a result of the wrongful actions of Compass Vision, in addition to suffering monetary
12 loss, plaintiff Deborah Wilson suffered damage to her reputation from the suspension of her
13 nursing license. Deborah Wilson was labeled a liar and alcoholic as a result of false positive EtG
14 tests with consequent and foreseeable humiliation and emotional distress. (Complaint at ¶ 35.)

15    Plaintiff alleges that the actions of Compass Vision were reckless and outrageous.
16 Compass Vision's actions concerning EtG and its sale of the testing program, as giving reliable
17 and absolute proof that a person had drank alcoholic beverages, were in reckless disregard of the
18 lack of research done and the damaging information that came to light about the test. (Complaint
19 at ¶¶ 23-30, 34 and 36.)

## ARGUMENT

**I.    STANDARD OF REVIEW**

Plaintiff agrees with the legal standard of review as stated by the defendant.

**II.   THE COMPLAINT ALLEGES A VIABLE CLAIM FOR NEGLIGENCE**

By not citing any applicable case law, Compass Vision, by default, admits that whether a TPA of a drug testing program owes a duty to a tested employee to use reasonable care to avoid false positive results is a question of first impression in California.

Although California courts have not ruled on the issue, courts in many other states (for example, Pennsylvania, Illinois, Wyoming, Oregon, and Louisiana) have found that there is a

duty of care in connection with urinalysis. Those courts specifically found that the imposition of a duty of reasonable care is appropriate. They reason that the injuries caused by negligent conduct in connection with urinalysis is foreseeable to companies who undertake to be involved in urinalysis for profit. It is respectfully submitted that this honorable Court, in light of the reasonable analysis made by the courts of these states, should find that defendant Compass Vision had a duty of care to plaintiff Deborah Wilson, under the circumstances as alleged in Plaintiff's Complaint. With that finding, it is submitted that plaintiff has properly stated a negligence claim upon which relief can be granted.

The crux of plaintiff's negligence case, as pled, is that the defendant rushed an unfit drug test into the marketplace. The "duty to use a reasonable degree of care to avoid erroneous test results" is framed in the Complaint as arising from the defendant "promoting, advertising, marketing, selling, and/or contracting with the licensing board and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing the EtG test to allegedly establish that the plaintiff consumed an alcoholic beverage. (Complaint at ¶ 30.)

As stated in the often cited seminal California Supreme Court case of *Rowland v Christian,* 69 Cal.2d 108, 112 (1968), under California law by statute and common law there exists the fundamental principle that, "[a]ll persons are required to use ordinary care to prevent others being injured as the result of their conduct". There is thus a presumption of a duty of care. To depart from this principle, California courts use a balancing of factors. It is respectfully submitted that under any analysis,[1] there is no reason to depart from the presumed imposition of a duty of care in California. The virtual certainty of injury, to the testing nurse or doctor from a false positive drug test, clearly outweighs the utility of protecting the introduction and use of a flawed test such as EtG.

---

[1] See also *30 Rutgers L.J. 473 1999,* "Liability of a Laboratory for Negligent Employment or Pre-employment Drug Testing", where the authors submit that under any proper duty analysis, including foreseeability, risk-duty analysis and the balance of factors test, a duty of those involved in drug testing of employees would be found and cite that cases where courts have made an analysis have uniformly found such a duty to exist.

The defendant attempts to equate the instant case with that of the absence of a professional duty of care, where there is no physician-patient relationship. The decisions in *Keene v Wiggins* 69 Cal. App.3d 308 (1977) and *Felton v. Schaeffer,* 229 Cal. App. 3rd 229 (1990), the cases cited by the defendant, are based on the necessity of a physician-patient relationship for the imposition of duty of care on a physician evaluating an individual's medical condition. The two cases held that a person examined on behalf of and for the benefit of a worker's compensation insurer (*Keene*) or a prospective employer (*Felton*) could not sue the physician for negligence in diagnosis. *Keene* stressed that it was unforeseeable that such an examinee would rely on the compensation doctor's report to the prospective employer. (*See Keene* at 314.) *Felton* largely followed *Keene*. (*See Felton* at 234-238.)

It is respectfully submitted that the scope and objects of a drug program administrator's duties of care, (whose tasks in the instant case included, designing the program, setting test cut-offs and the collecting of urine samples for testing, reporting and interpreting results) are by no means necessarily the same. With respect to a program administrator or laboratory that undertakes to test an employee for alcohol or drugs whose present employment will be compromised by an affirmative finding, the foreseeability of the consequences point predominantly, if not entirely, in favor of the recognition of a duty of care when examining the factors that are traditionally relevant to such an analysis in California. (*See Rowland v. Christian*, at 112-113). This is even more the case, where the administrator or laboratory introduces and promotes a new test that is scientifically unfit for the purpose for which it was promoted.

Plaintiff submits that a proper duty analysis was done by the Pennsylvania Supreme Court in *Sharpe v. St. Luke's Hospital,* 573 Pa. 90, 821 A.2d 1215 (2003), a central and crucial case in the employment drug testing arena. The *Sharpe* Court analyzed whether a duty should be recognized using a balance of factors analysis. (*Id.* at 1219.)

The Pennsylvania Supreme Court specifically held in *Sharpe* that a hospital owes a duty of reasonable care with regard to collection and handling of urine specimens for employment-related drug testing. This decision reversed the lower court which upheld the trial court's finding of no duty. The Pennsylvania Supreme Court, in so holding, quoted Pennsylvania Superior Court

President Judge McEwen's dissent in the lower court decision, that a duty should be imposed upon any, "hospital or laboratory involved in any stage of drug testing to adhere to a standard of reasonable and prudent conduct to prevent an undue risk of harm from false positive test results." (*Sharpe* at 1218.)  The Court further quoted approvingly, that in employment-related drug testing "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result."  (*Sharpe* at 1220.)

As the *Sharpe* Court noted in following the lead of Judge McEwen, "President Judge McEwen also found it critical that Sharpe had already attained employment…for purposes of imposing a duty of reasonable care, given the resultant loss of employment and the stigma inevitably attaching to her subsequent attempts to obtain employment." (*Sharpe* at 1218.)  The *Sharpe* duty analysis centered on the "substantial public interest" in avoiding the "potential ramifications of false positives".  (*Sharpe* at 1221.)  It is respectfully submitted to this honorable Court that the same reasoning is persuasive in the recognition of a duty here. "The risk of harm in our society to an individual because of a false-positive drug test is so significant that failure to find protection under our law would be a step backwards for the protection of the individual." (*Sharpe* at 1221.)

In *Althaus v. Cohen*, the Court held that the concept of duty is rooted in public policy, and the determination of whether a duty should be imposed upon an alleged tortfeasor involves a balancing of the following factors: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Althaus v. Cohen,* 562 Pa. 547, 553, 756 A.2d 1166, 1169 (Pa. 2000).

Defendant Compass Vision did more than collect the urine and report the results. Compass Vision promoted the new EtG test as foolproof, at arbitrary cut-offs that it established, when the test lacked sufficient proven specificity for the role for which it was being promoted. The public policy justification for recognizing a duty here is thus much stronger than with the hospital in *Sharpe*.  It is respectfully submitted the defendant owed a duty to the plaintiff to use reasonable care to prevent an undue risk of harm from a false positive test result.

In addition to *Sharpe,* other state courts that have found a duty on less persuasive facts than in the instant case, include Illinois, Wyoming and Louisiana. In Illinois: *Stinson v. Physicians Immediate Care Ltd.,* 269 Ill. App.3d 659, 646 N.E.2d 930, 207 Ill. Dec. 96 (Ill. App. Ct., 1995), a duty was found where the plaintiff sued the laboratory that had "collected the sample, performed the drug testing, and reported the results to the employer." The *Stinson* Court in analyzing whether there was a duty, found, "[t]here is a close relationship between a plaintiff and a defendant which has a contract with the plaintiff's employer if it is reasonably foreseeable that the plaintiff will be harmed if the defendant negligently reports test results to the employer." (*Id.* at 933.)

In Wyoming: *Duncan v. Afton Inc.*, 991 P.2d 739 (Wyo. 1999), where the Wyoming Supreme Court, using a balance of factors test, held that a company, solely collecting urine for the standard alcohol test, owed a duty of care to the employee, (not its own employee). The *Duncan* Court held that, "[t]he positive consequences to the community in protecting employees' interests are not outweighed by society's interest in detecting substance abuse." (*Id.* at 746.)

In Louisiana: *Elliott v. Laboratory Specialists, Inc.* 588 So.2d 175 (La. Ct. App.1991), in holding that a drug testing laboratory had a duty to the tested employee to properly perform a test for marijuana that Court stated:

> "…to suggest that (the laboratory) does not owe plaintiff a duty to analyze his body fluid in a scientifically reasonable manner is an abuse of fundamental fairness and justice…the risk of harm in our society to an individual because of a false-positive drug test is so significant that any individual wrongfully accused of drug usage by his employer is within the scope of protection under the law.

(*Id.* at 176.)

It is respectfully submitted that under traditional California duty analysis, and as demonstrated by the sound reasoning of the cases from other jurisdictions cited, this honorable Court should deny the motion to dismiss concerning plaintiff's negligence claim against defendant Compass Vision.

## III. PLAINTIFF IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT

Plaintiff is at a loss at understanding any justification for this alleged basis for dismissal. Defendant cites no controlling case law or statutory authority requiring remedies to be exhausted prior to suing a Third Party Administrator for indeed none exist. *Eight Unnamed Physicians v. Med Exec. Comm. Of the Med Staff of Wash. Township Hospital.,* 150 Cal. App.4th 503, 510-511, cited by defendant, clearly explains that the Exhaustion of Administrative Remedies Doctrine concerns suit against an organization of which the plaintiff is a member.

> It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance.

*Westlake Community Hosp. v. Superior Court* 17 Cal.3d 465, 474–475 (131 Cal. Rep. 90, 551 P.2d 410) (1976).

Moreover, even if the doctrine was applicable, it does not apply if no administrative remedy is available. (*Id*. at 511.) Two courts have held that the exhaustion requirement does not apply if no administrative remedy is available. (*See Kaiser Foundation Hospitals v. Sacrament County Superior Court,* 128 Cal.App.4th 85, 101*, 26 Cal. Rep.3d 714 (Cal. App.3 Dist., 2005); Bollengier v. Doctors Med. Ctr.,* 222 Cal. App.3d 1115, 1126*, 272 Cal. Rep. 273 (Cal. App.5 Dist., 1990.*)

Plaintiff is not a member or employee of the defendant. She has no administrative course available against the defendant, to seek damages for her having tested "positive" for the faulty EtG test, negligently promoted by, and used on her by the defendant. The law cited by the defendant may limit court action against the Nursing Board, but not against a private party. Defendant's motion that the plaintiff's claims be dismissed for the failure to exhaust administrative remedies should therefore be denied.

///

///

///

- 9 -

MEMO P&A OPP TO DEFENDANT'S MOT TO DISMISS
*Wilson v. Compass Vision, et al.,* Case No. 3:07-cv-03431 BZ

## III. PLAINTIFF IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT

Plaintiff is at a loss at understanding any justification for this alleged basis for dismissal. Defendant cites no controlling case law or statutory authority requiring remedies to be exhausted prior to suing a Third Party Administrator for indeed none exist. *Eight Unnamed Physicians v. Med Exec. Comm. Of the Med Staff of Wash. Township Hospital.,* 150 Cal. App.4th 503, 510-511, cited by defendant, clearly explains that the Exhaustion of Administrative Remedies Doctrine concerns suit against an organization of which the plaintiff is a member.

> It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance.

*Westlake Community Hosp. v. Superior Court* 17 Cal.3d 465, 474–475 (131 Cal. Rep. 90, 551 P.2d 410) (1976).

Moreover, even if the doctrine was applicable, it does not apply if no administrative remedy is available. (*Id*. at 511.) Two courts have held that the exhaustion requirement does not apply if no administrative remedy is available. (*See Kaiser Foundation Hospitals v. Sacrament County Superior Court,* 128 Cal.App.4th 85, 101*, 26 Cal. Rep.3d 714 (Cal. App.3 Dist., 2005); Bollengier v. Doctors Med. Ctr.,* 222 Cal. App.3d 1115, 1126*, 272 Cal. Rep. 273 (Cal. App.5 Dist., 1990.*)

Plaintiff is not a member or employee of the defendant. She has no administrative course available against the defendant, to seek damages for her having tested "positive" for the faulty EtG test, negligently promoted by, and used on her by the defendant. The law cited by the defendant may limit court action against the Nursing Board, but not against a private party. Defendant's motion that the plaintiff's claims be dismissed for the failure to exhaust administrative remedies should therefore be denied.

///

///

///

## IV. THE DEFENDANT'S CONDUCT JUSTIFIES THE ALLEGATIONS OF RECKLESSNESS ALLOWING PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff does not challenge the law cited by the defendant on this issue. Plaintiff asserts that the facts as pled in the Complaint, if proved, would allow a finding by a jury that Compass Vision acted with reckless indifference to the rights of the nurses undergoing EtG testing, including the plaintiff. Compass Vision did not only perform and report the EtG testing of Deborah Wilson, Compass Vision promoted the new test with claims it should have known were unsubstantiated and unsupportable by the meager research that had been done. Thus Compass Vision recklessly placed Deborah Wilson into the position of unfairly losing her livelihood and having her reputation besmirched. The conduct of Compass Vision was more serious and encompassing than the mere commission of negligence.

Here, as recognized by Pennsylvania's Supreme Court in *Sharpe*: "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result." *(Sharpe,* at 1220.) Compass Vision, as a TPA, acts as a professional in employment drug testing. The defendant was thus well aware of the risk to nurses who underwent EtG testing, including the plaintiff. Plaintiff submits that a jury could find Compass Vision's actions towards Deborah Wilson wanton and outrageous. Not only did Compass Vision recklessly promote EtG as being capable of determining whether a nurse had drank alcoholic beverages, the defendant also disregarded abundant literature in the field concerning the test's invalidity. Further, a jury could find that the defendant's motive for looking the other way, was solely profits. Defendant Compass Vision's motion to dismiss the punitive damages claims of the Complaint should therefore be denied.

## V. THE COMPLAINT ALLEGES A VIABLE CLAIM FOR EMOTIONAL DAMAGES

Plaintiff's claim for damages due to defendant Compass Vision's negligent conduct is stated in the Complaint:

- 10 -
MEMO P&A OPP TO DEFENDANT'S MOT TO DISMISS
*Wilson v. Compass Vision, et al.,* Case No. 3:07-cv-03431 BZ

> As a direct and proximate result of the defendants' negligence, she has suffered great, permanent and irreparable harm. These injuries include, but are not limited to: the future possible revocation of her license, loss of earnings and earning capacity, expenses associated with random EtG tests and other evaluations, other pecuniary losses flowing directly and consequentially from the EtG testing, humiliation, damage to her reputation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

(Complaint at ¶ 35.)

The emotional damages claimed are not incident to her economic loss. They are the foreseeable consequence from her being labeled as a drug addict and liar as a result of the false positive EtG alcohol test, when she was truthfully maintaining that she was in recovery. The implication that she would lie about her recovery was humiliating, reasonably and foreseeably causing her anxiety and emotional distress. The stain on her license and its possible revocation damaged her reputation. The invalid test caused a real and justified apprehension that she would no longer be able to practice her chosen profession.

Since there is no controlling precedent in California, plaintiff respectfully submits the persuasiveness of the Pennsylvania Supreme Court, who in recognizing a duty to an employee undergoing drug testing, also recognized that damage to reputation and economic loss was recoverable, despite the absence of any physical injury. That Court noted in its opinion: "Sharpe averred direct and immediate harm to both her reputation and economic status resulting from the termination of her employment."[2] (*Sharpe* at 1217.) The Court also quoted President Judge McEwen, that the need to recognize a duty was due to "the loss of employment and the *stigma inevitably attaching* to her subsequent attempts to obtain employment." (emphasis supplied.)

It would not be logical to recognize a duty due to an inevitable injury, and then not let the plaintiff recover for that injury. Compass Vision, by negligently promoting a faulty test, caused plaintiff Deborah Wilson to be stigmatized as an incorrigible drug addict, unfit to practice

---

[2] The Court also recognized that the only still active claim was for negligence. "Although Sharpe also asserted claims of defamation, fraudulent misrepresentation and breach of contract, she voluntarily withdrew those claims before the trial court. Moreover, while Sharpe did not withdraw her claim for deliberate and reckless misconduct, the trial court and the Superior Court engaged in no discussion on that count. Nor do the parties advance any argumentation along these lines." (*Sharpe at 1217.*)

nursing. Compass Vision should therefore be held accountable for the injuries flowing from her loss of reputation and stigmatization, including her emotional injuries. Just as there is no requirement for proof of physical injury to recover her inevitable economic loss, there should be no requirement of physical injury to recover damages for her inevitable loss of reputation and foreseeable emotional injury. Defendant Compass Vision's motion to dismiss plaintiff's claims for emotional damages should therefore be denied.

## CONCLUSION

For all the foregoing reasons set forth above, Plaintiff respectfully requests that this Honorable Court dismiss the Motion of Compass Vision to Dismiss Plaintiff's Complaint.

DATED: October 24, 2007

Respectfully Submitted,

By: _____
Joshua A. Ridless

Joshua A. Ridless
Paul A. Moore III
LAW OFFICES OF JOSHUA A. RIDLESS
244 California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 614-2600
Facsimile: (415) 480-1398

*Attorneys for Plaintiff Deborah Wilson*