DION N. COMINOS (SBN: 136522)
dcominos@gordonrees.com
CATHERINE A. SALAH (SBN: 154524)
csalah@gordonrees.com
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Defendant
COMPASS VISION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WILSON | CASE NO. C 07-03431 BZ |
| Plaintiff, | **COMPASS VISION, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| vs. | |
| COMPASS VISION, INC.; and NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS | **[Fed. R Civ. P. 12(b)(6)]** |
| Defendants. | Date: December 5, 2007<br>Time: 10:00 a.m.<br>Crtrm: G<br>Judge: Hon. Bernard Zimmerman |

Defendant COMPASS VISION, INC. ("Compass Vision") respectfully submits this reply memorandum of law to Plaintiff DEBORAH WILSON's Opposition to Compass Vision's Motion to Dismiss her Complaint pursuant to Fed R. Civ. P. 12(b)(6).

## I. INTRODUCTION TO REPLY

Plaintiff concedes that no California authority provides any support for her "new and unique" claim that Compass Vision, a third-party administrator of drug and alcohol testing programs, owed her a duty of care such that Plaintiff can maintain her claim for negligence against Compass Vision. Nor do *any* of the out-of-state decisions Plaintiff cites in support of her Opposition to Compass Vision's Motion to Dismiss.

Plaintiff's efforts to stretch the decisions in a handful of out-of-state cases to maintain her negligence claim against Compass Vision are to no avail. This is because *none* of the cases cited by Plaintiff go so far as to impose a duty of care on a third-party administrator of drug and/or alcohol testing programs to the persons tested. Rather, each of the cases relied upon by Plaintiff involve a negligence claim against the drug-testing laboratory that was alleged to have negligently collected, handled or reported the test results. Here, Plaintiff is not alleging that EtG was not accurately detected in her urine. Rather, Plaintiff claims that the EtG tests performed by NMS were flawed because ordinary products could result in positive test result, which she claims occurred in her case. Moreover, unlike the cases upon which she relies, Plaintiff acknowledges in her Complaint that Compass Vision did not: (1) collect any of her samples, (2) handle her samples (3) perform any testing of her samples, (4) analyze the results thereof or (4) report the results of her testing. Plaintiff further acknowledges in her Complaint that Compass Vision did not initiate the testing program for California nurses in recovery for drug or alcohol abuse nor administer the recovery program. Moreover, Plaintiff nowhere pleads in her Complaint that it was Compass Vision's decision as to whether or how to use her test results. Finally, Plaintiff's Complaint nowhere avers that Compass Vision had a fiduciary relationship with her or any other similar relationship.

Not only do none of the cases relied upon by Plaintiff impose a duty upon a third-party administrator, such as Compass Vision, the cases have no applicability to her claims whatsoever. This is because the only duty, if any, that has been imposed on a laboratory to a donor tested for occupational purposes is to appropriately handle the donor's specimen and accurately test the specimen for the compounds or substances requested by the employer or other third-party. Plaintiff Wilson does not contend that her urine specimens were negligently handled or tested. Rather, the gravamen of her negligence claim is that defendants rushed EtG testing to the market. This is nothing but an inartful re-labeling of her negligent misrepresentation claim, which claim she has abandoned.

There being no precedent, either in California or in any other jurisdiction, upon which a duty has been imposed upon a third-party administrator such as Compass Vision to someone in

1 Plaintiff's position, Plaintiff's sole remaining claim for negligence fails. It follows that
2 Plaintiff's Complaint fails to state a claim upon which relief can be granted, subjecting her
3 Complaint against Compass Vision to dismissal.

### II. PLAINTIFF'S REMAINING CLAIM FOR NEGLIGENCE FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Several of the operative facts of Plaintiff's Complaint bear repeating in light of Plaintiff's efforts to obfuscate in her Opposition to Compass Vision's Motion. Again, Plaintiff alleges that **the State of California instituted EtG testing of nurses participating in the California Nurses Recovery Program**, including Plaintiff. (Complaint at ¶ 15.) According to Plaintiff's Complaint, an independent contractor hired by the Nursing Board, **Maximus, served as the administrator of the Recovery Program**. (Complaint at ¶ 4.) She pleads that the Nursing Board, through Maximus, became a signatory to a service contract with Compass Vision as its TPA for the EtG testing program for California nurses, including Plaintiff. Plaintiff's alleges that, in turn, **Compass Vision engaged NMS as its testing lab facilities for EtG testing of nurses,** including Plaintiff. (Complaint at ¶¶ 6 and 15.) According to her Complaint, **Defendant NMS was responsible for providing the Nursing Board with the results of the testing.** (Complaint at ¶ 7.) Plaintiff asserts that on two separate occasions, in May and June 2005, **she was reported by NMS as having tested positive for EtG.** As a result, Plaintiff was suspended from work. (Complaint at ¶ ¶ 17 and 18.) According to her Complaint, **she was subsequently terminated from the Nurses Recovery Program when she tested positive for opiates**. (Complaint at ¶ 19.) As noted in Compass Vision's moving papers, Plaintiff's Complaint is silent as to the existence of *any* relationship with Compass Vision.

**A.   Plaintiff Cannot Demonstrate The Existence of a Duty**

None of the cases cited by Plaintiff in her Opposition support her position that Compass Vision owed her a duty of care. In each of the cases relied upon by Plaintiff the issue presented to the court was whether a **drug testing laboratory** can be found to have a duty of care to persons tested **for negligently performing, handling or contaminating drug tests**. As Plaintiff admits in her Complaint, Compass Vision is not a drug testing laboratory and did not collect or

1  perform any testing of her samples.[1]

2  *Sharpe v. St. Luke's Hospital*, 573 Pa. 90, 821 A.2d 1215 (Pa. 2003), the primary case
3  relied upon by Plaintiff in her Opposition, goes nowhere close to imposing a duty on a third-
4  party administrator, such as Compass Vision, to a person being tested for drugs or alcohol.  In
5  *Sharpe*, an employee who was terminated after she tested positive for cocaine brought a
6  negligence action against the hospital which had collected her urine sample.  Plaintiff alleged
7  that the hospital had **negligently mishandled** the sample.  Plaintiff alleged that "numerous
8  events" transpired at the hospital that affected the chain of custody associated with her urine
9  sample, as a result of which it was **misidentified and/or mishandled**.  (*Sharpe* at p. 92.)  In light
10 of the evidence of negligence in the collection and/or handling, the court found that there was a
11 sufficient relationship between the hospital and plaintiff to justify the imposition of a duty upon
12 the hospital to exercise reasonable care **in the collection and handling** of the urine specimen
13 and that it was foreseeable to the hospital that any negligence **with respect to the handling** of
14 the specimen could harm the employee's employment.  In so holding, the court in *Sharpe*
15 pointed to the substantial public interest in "ensuring that the medical facilities **involved in the**
16 **testing"** exercise a reasonable degree of care to avoid erroneous test results occurring because of
17 negligence.  (*Sharpe* at p. 99.)

18  Here, Plaintiff nowhere alleges that Compass Vision collected any of her samples.  Nor
19 does she allege that Compass Vision was responsible for handling her samples.  Moreover,
20 unlike the situation presented to the court in *Sharpe,* Plaintiff is not alleging negligence in the
21 handling of her samples.  Plaintiff's reliance on *Sharpe*, therefore, in support of her opposition is
22 misplaced.

23  Plaintiff conspicuously neglects to address the Texas Supreme Court's decision in
24 *SmithKline Beecham Corp. v. Doe,* 903 W.2d 347 (Tex. 1995), despite the fact that the court in
25 *Sharpe* expressly references this case as providing contrary authority to its ruling.  (*Sharpe* at p.
26 97.)  In *SmithKline,* the Texas Supreme Court held that a laboratory conducting drug testing

---

[1] Again, Plaintiff expressly avers that Compass Vision is a third party administrator of drug and alcohol testing programs (Complaint, ¶ 3) and that NMS was the lab responsible for conducting and reporting her test results.  (Complaint, ¶¶ 6 and 7.)

-4-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1 under a contract with an employer has no relationship with, and thus, no duty to a prospective

2 employee. (*SmithKline* at p. 356.) Here, the involvement of Compass Vision does not even rise

3 to the level of the defendant laboratory in *SmithKline*, which was the entity responsible for

4 conducting the drug testing at issue in that action. As such, Compass Vision owes no duty to

5 Plaintiff.

6   *Stinson v. Physicians Immediate Care Ltd.*, 269 Ill.App.3d 659 (1995), another case

7 relied upon by Plaintiff in her Opposition, is yet another lawsuit involving claims against a **drug**

8 **testing laboratory** for **negligent testing and negligent reporting.** In *Stinson*, plaintiff alleged

9 that defendant laboratory was responsible for: (1) collecting Plaintiff's sample, (2) performing

10 the drug testing, and (3) reporting the results of Plaintiff's tests to his employer. Plaintiff in that

11 action alleged numerous negligent acts in the collecting and handling of his specimen by the

12 testing laboratory, including claims that the lab: (1) failed to instruct its employees of the danger

13 of specimen contamination; (2) failed to use specimen containers with sealable and tamper-

14 evident lids; (3) failed to seal the specimen containers; (4) failed to obtain the plaintiff's initials

15 or otherwise identify the specimen as belonging to the plaintiff; (5) conducted the drug-screening

16 test so that the results were not accurate and were in error; (6) erroneously tested and reported

17 that the plaintiff had cocaine in his body and (7) failed to use routinely followed precautionary

18 procedures, and otherwise conducted the drug-screening test so that the results erroneously

19 diagnosed cocaine in his body. (*Stinson* at p. 661.) The plaintiff in *Stinson* further alleged that

20 the lab falsely reported the results to his employer. (*Id.* at p. 660.)

21   The court in *Stinson* found the existence of a duty based upon the "close relationship"

22 between a plaintiff and defendant if it is reasonably foreseeable that the plaintiff will be harmed

23 "if the defendant negligently reports the results to the employer." (*Stinson* at p. 664.) The court

24 further commented, "[T]he **drug-testing laboratory** is in the best position to guard against the

25 injury, **as it is solely responsible for the performance of the testing and the quality control**

26 **procedures**." (*Ibid*, emphasis added.) That the *Stinson's* court's ruling was expressly limited to

27 drug-testing laboratories cannot be disputed given the court's holding that "[W]e therefore hold

28 that a **drug-testing laboratory** owes a duty of reasonable care to persons **whose specimens it**

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

-5-

1 **tests** for employers or prospective employers." (*Stinson* at p. 665.)

2     Here, Plaintiff does not allege that Compass Vision was a drug-testing laboratory or that
3 Compass Vision collected any of her samples, performed the drug testing or reported the results
4 to the Nursing Board. Given that the facts and the issues presented to the court in *Stinson* are
5 entirely disparate from those before this Court, *Stinson* is not controlling authority.

6     *Duncan v. Afton Inc.*, 991 P.2d 739 (Wyo. 1999), another case relied upon by Plaintiff,
7 once again involved alleged improper collecting and handling of a urine specimen. Plaintiff in
8 that action claimed that the temperature of his specimen had been incorrectly noted and, further,
9 that his specimen had remained unsealed for a period of time, allowing for contamination. The
10 court in *Duncan* ruled that **the collection company** owed a duty of care to the employee when
11 **collecting**, **handling**, and **processing** plaintiff's urine specimen for the purpose of performing
12 substance abuse testing. (*Duncan* at p. 740.) Again, the facts and issues presented to the court in
13 *Duncan* are entirely dissimilar to those before this Court since Plaintiff does not allege that
14 Compass Vision improperly collected or handled her specimen. *Duncan,* therefore, is not
15 controlling authority and in no manner supports Plaintiff's negligence claim against Compass
16 Vision.

17     *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175 (La.App.5th Cir. 1991), another case
18 mistakenly relied upon by Plaintiff in her Opposition, is both factually and legally
19 distinguishable as well. In that case, the plaintiff filed an action against a **drug testing**
20 **laboratory** alleging **negligent conducting and reporting** of a post-accident urinalysis to
21 plaintiff's former employer, a result of which Plaintiff was terminated. The court in *Elliott*
22 determined that the drug testing laboratory, acting as an independent contractor for plaintiff's
23 employer in **conducting drug testing** on an employee, **owed a duty of care to the employee to**
24 **analyze the body fluid in a scientifically reasonable manner**. Once again, the court in *Elliott*
25 made it clear that it's ruling was limited to drug testing laboratories stating, "[W]e find that **drug**
26 **testing laboratories** . . . owe a duty of care to the testee/employee…" (*Elliott* p. 176, emphasis
27 added.) Given Plaintiff's admission that Compass Vision is not a drug testing laboratory and did
28 not collect or analyze her samples, Plaintiff's reliance on *Elliot* in support of her novel theory

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  that Compass Vision owed her a duty of care is similarly misplaced.

2        Not only has Plaintiff based her opposition on out-of-state cases which are entirely
3  distinguishable from the issue presently before this Court, Plaintiff failed to point out to the
4  Court that not all jurisdictions have found a duty on the part of drug-testing laboratories to the
5  individuals tested. Numerous courts in other jurisdictions have expressly ruled to the contrary.
6  For example, in *Hammond v. City of Philadelphia*, a police officer terminated from employment
7  as a result of alleged drug use brought a claim against the drug testing company for negligence.
8  Plaintiff asserted that defendant drug-testing company owed him a duty of care to: (1) properly
9  maintain control of his urine sample to prevent tampering and contamination; (2) properly
10 maintain testing devices for accurate testing; and (3) ensure that the tests were performed
11 accurately. The court in *Hammond* held that, for negligence purposes, "[A] drug laboratory
12 owes no duty of care to a customer's employee when it performs drug screening tests on the
13 employee on behalf of the customer." (*Hammond* at p. 483, citing *Ney v. Axelrod*, 723 A.2d 719,
14 722 (Pa. Super. 1999); *Promubol v. Hackett*, 454 Pa. Super. 622, 686 (1996); *Tomko v. Marks*,
15 412 Pa.Super. 54 (1992); and *Elia v. Erie Ins. Exchange*, 398 Pa.Super. 4233 (1990).) The court
16 explained its rationale for its ruling as follows:

> Drugscan tested plaintiff's urine on behalf of the Department. There are no allegations of any other relationship between Drugscan and Plaintiff. Drugscan owed no duty of care to plaintiff. In the absence of a duty of care, plaintiff cannot make out a negligence claim against Drugscan. (*Ibid.*)

20       Accordingly, the *Hammond* court dismissed the plaintiff's Complaint for failure to state a
21 claim upon which relief could be granted. (*Hammond* at p. 484.)

22       Another case Plaintiff fails to mention in her Opposition to Compass Vision's Motion is
23 the Texas Supreme Court's decision in *Mission Petroleum Carriers, Inc. v. Solomon*, 106
24 S.W.3d 705 (2003). In *Mission,* a truck driver who was terminated for failing a random drug test
25 brought a negligence action against his former employer, alleging the employer failed to use
26 ordinary care in collecting his urine specimen for testing. On the employer's Petition for
27 Review, the Texas Supreme Court held that employers who conduct in-house urine specimen
28 collection under Department of Transportation regulations for random drug-testing of employees

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-7-

1  owe no duty of care to employees to conduct the drug test with reasonable care.  (*Mission* at pp.
2  711-712.)
3      Two other cases which are inapposite to Plaintiff's position include *Herbert v. Placid*
4  *Ref. Co.,* 564 So. 2d 371, 374 (La.Ct.App. 1990) [holding that a drug testing laboratory owes no
5  duty of care to test subjects because its relationship is with the employer, not the employee] and
6  *Ney v. Axelrod*, 723 A.2d 719, 722 (Pa.Super.Ct. 1999) [Holding that a drug retesting laboratory
7  did not owe a prospective employee a duty of care].)  In *Ney,* the court held ". . . we are not
8  willing to create a theory of liability for negligent doctors or medical laboratories that have
9  contracted with third parties for employment-related testing.  Such causes of action do not
10 identify a substantial harm to an identifiable and readily discernable class of plaintiffs such that
11 we feel compelled to create liability based on a public policy rationale." (*Ney* at p. 722.)
12     Those courts which have addressed the same claims asserted by Plaintiff in the instant
13 matter, i.e., that a positive drug or alcohol test result was caused by a source other than the use of
14 drugs or alcohol, have dismissed the claims, finding no legal owed by the testing laboratory to
15 the person tested. (See *Caputo v. Compuchem Labs, Inc*., 37 F.3d 1485 (3rd Cir. 1994); *Cooper*
16 *v. Laboratory Corp. of Am. Holdings, Inc*. 150 F.3d 376 (4th Cir. 1998) [no duty to warn that
17 fermentation of glucose in urine specimen may cause positive alcohol result]; *Vargo v. National*
18 *Exch. Carriers Ass'n, Inc*.376 N.J. Super. 364, 380-82 (App.Div. 2005)[holding that a laboratory
19 owes no duty to warn of potential alternate causes of positive drug test results]; and *SmithKline*
20 *Beecham Corp., supra*, 903 S.W.2d at p. 354.)  No court has recognized a duty owed to the
21 individual tested where, as here, the laboratory accurately reported the test results to an employer
22 or other third party.
23     Unlike the defendant drug-testing laboratories in the cases relied upon by Plaintiff in her
24 Opposition, which labs actually tested or handled the plaintiffs' samples, the gravamen of
25 Plaintiff's claim for negligence against Compass Vision is not that her tests were negligently
26 performed or that her samples were contaminated or mishandled in any manner.  Rather, the crux
27 of Plaintiff's negligence claim against Compass Vision goes to the manner in which it
28

-8-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

purportedly marketed and promoted EtG testing *to others*. (Complaint at ¶¶ 15 and 34.)[2] As Plaintiff expressly notes in her Opposition, "[T]he crux of plaintiff's negligence case, as pled, is that the defendant rushed an unfit drug test into the marketplace." (Opposition, 4:15-16.) Such claim, which is essentially a recasting by Plaintiff of her abandoned claims for misrepresentation, fails to establish any relationship with Compass Vision, without which there can be no duty. And without any duty, Plaintiff's negligence claim fails as a matter of law.

### B.  Plaintiff Cannot Establish the Requisite Element of Causation

Not only has Plaintiff failed to establish the existence of any duty on the part of Compass Vision, Plaintiff's negligence claim fails since her Complaint establishes that she cannot demonstrate the requisite element of legal causation between any alleged acts and/or omissions by Compass Vision and her damages. The Court should take note of Plaintiff's admission that the reason she was terminated from the Nurses Recovery Program is because, after twice testing positive for alcohol, "Wilson was later terminated from the program after eating poppy seeds and testing positive for opiates." (Complaint at ¶ 19.) Plaintiff does not allege that Compass Vision was involved in any manner in her positive test results for opiates.

Plaintiff's admission that she was terminated from the Nurses Recovery Program due to positive drug-testing results, which had nothing to do with Compass Vision, mandates the dismissal of her action for her failure to establish the requisite element of causation.

### C.  Plaintiff Cannot Establish the Requisite Element of Damages

Similarly, Plaintiff's admission negates her claim for damages which are, in any event, entirely speculative given her averment that she only faces the "*possible* loss of her license to practice nursing." (Complaint at ¶ 21, emphasis added.) (See *Ney*, *supra*, 723 A.2d at p. 722 [the court classified plaintiff's claim for damages as speculative and insufficiently substantial to support imposition of a duty].) Plaintiff misses entirely Compass Vision's argument with respect to her failure to exhaust her administrative remedies before bringing the instant action. Sections 1337.9, subdivision (g)(2) and 1337.9, subdivision (h)(1) of the California Health and Safety

---

[2]  Notably, Plaintiff has withdrawn he claims for fraudulent misrepresentation and negligent misrepresentation, thus admitting that no alleged misrepresentations by Compass Vision were ever made to her.

-9-

COMPASS VISION, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS    CASE NO. C 07-03431 BZ

1  Code provide that an individual who has his or her license suspended has the right to appeal and
2  to request an administrative hearing before the Nursing Board.  It is the fact that Plaintiff failed
3  to comply with the administrative process available to her and, thus, faces the mere future
4  possibility that she will lose her nursing license, that renders her alleged damages conjectural
5  since no final decision regarding her license has ever been reached.

### III. PLAINTIFF'S COMPLAINT DOES NOT SET FORTH A VALID CLAIM FOR PUNITIVE DAMAGES OR EMOTIONAL DISTRESS

8  There is nothing in the allegations alleged by Plaintiff in her Complaint, nor explained by
9  her in her Opposition, that entitles Plaintiff to an award of punitive damages against Compass
10 Vision.  Nor does Plaintiff challenge the law cited by Compass Vision (Opposition, 10:4-7)
11 which law clearly precludes such claim.
12 Similarly, Plaintiff's claim for emotional distress damages lacks merit, since Plaintiff has
13 not pled that she suffered physical injury as a result of any conduct of any of the defendants
14 herein.  Plaintiff, therefore, is not entitled to such damages.  (*Friedman v. Merck & Co., Inc., et
15 al.*, 107 Cal.App.4th 454, 485.)

### IV. CONCLUSION

17 Plaintiff has not, and cannot, demonstrate duty, causation or damages – any of the
18 essential elements of her negligence claim against Compass Vision.  Given that Plaintiff has
19 abandoned all other claims, her Complaint fails in its entirety and should properly be dismissed.

21 Dated:  November 7, 2007                          GORDON & REES LLP

                                                    By:   /s/ Catherine A. Salah
                                                    ─────────────────────────
                                                    DION N. COMINOS
                                                    CATHERINE A. SALAH
                                                    Attorneys for Defendant
                                                    COMPASS VISION, INC.

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-10-
COMPASS VISION, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS       CASE NO. C 07-03431 BZ