CHRISTIAN B. GREEN, SBN 173502
LAW OFFICES OF SAMUEL G. GRADER
2180 Harvard Street, Suite 400
Sacramento, CA 95815
Telephone: (916)567-6404
Direct Line: (916)567-6426
FAX: 866-903-4464

Attorney for Defendant NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WILSON,<br><br>     Plaintiff,<br><br>vs.<br><br>COMPASS VISION, INC., et al.,<br><br>     Defendants. | Case No. 3:07-cv-03431 BZ<br><br>**DEFENDANT NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OF DEBORAH WILSON**<br><br>**Complaint Filed:** May 22, 2007<br><br>**Date:** November 28, 2007<br>**Time:** 10:00 a.m.<br>**Courtroom:** G<br>**Judge:** Hon. Bernard Zimmerman<br>**Trial Date:** Not set |

Case No. C07-3431 BZ

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 2

ARGUMENT .............................................................................................................................. 2

I.  PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE ................................... 2

    A.  Courts in Other Jurisdictions Have At Most Recognized Only a Limited Duty With Respect to the Collection and Handling of Specimens ............................... 3

    B.  Plaintiff's Claim for Emotional Damages Fails Because It Is Derivative of the Failed Claim for Negligence .............................................................................. 5

CONCLUSION ........................................................................................................................... 6

# TABLE OF AUTHORITIES

## CASES

*Caputo v. Compuchem Laboratories, Inc.*, Civ. A. No. 92-6123,
  1994 WL 100084 (E.D. Pa. Feb. 23, 1994), *aff'd*, 37 F.3d 1485 ................................. 3, 4

*Cooper v. Laboratory Corp. of America Holdings, Inc.*, 181 F.R.D.
  312 (D.S.C. 1997), *aff'd* 150 F.3d 376 (4th Cir. 1998) ............................................... 3

*Duncan v. Afton, Inc.*, 991 P.2d 739 (Wy. 1999) ........................................................... 4

*Elliott v. Laboratory Specialists*, 588 So. 2d 175 (La. Ct. App. 1992) ........................... 4

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.* (1989), 48 Cal.3d 583 ................ 5

*Sharpe v. St. Luke's Hospital*, 821 A.2d 1215 (Pa. 2003) .............................................. 4

*SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347 (Tex. 1995) .................................. 3

*Stinson v. Physicians Immediate Care Ltd.*, 269 Ill. App. 3d 659, 646
  N.E.2d 930 (Ill. App. Ct. 1995) .................................................................................. 4

*Thing v. La Chusa* (1989) 48 Cal.3d 644, 647 ............................................................... 5

*Vargo v. National Exch. Carriers Association, Inc.*, 376 N.J. Super.
  364 (App. Div. 2005) ................................................................................................. 3

*Willis v. Roche Biomedical Labs., Inc.*, 61 F3d 313, 316 (5th Cir. 1995) ....................... 3

## STATUTES

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2

Defendant respectfully submits this memorandum of points and authorities in reply to plaintiff's opposition to defendant's motion to dismiss, with prejudice, Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff has now withdrawn her claims of fraudulent misrepresentation and negligent misrepresentation pled in her complaint. She now seeks to proceed based solely on her negligence theory, asserting that her negligence claim is "new and unique." Her negligence claim should not be allowed to go forward. Plaintiff simply has failed to identify any authority, and none exists, that would support her argument that, under the circumstances alleged, Defendant owed or breached any duty of any nature to Plaintiff. Absent such a duty, Plaintiff's negligence claim cannot survive.

## ARGUMENT

### I.  PLAINTIFF FAILS TO STATE CLAIM FOR NEGLIGENCE

With respect to her negligence claim, the essence of plaintiff's claim is that Defendant "introduce[ed] and promot[ed] a new test into the marketplace of employment drug testing, which was not capable of being used for the purpose for which it was introduced and promoted," further, that defendant "marketed, sold, established arbitrary invalid cut-offs and wrongly interpreted this faulty test," and that the subject "EtG test is a 'false positive' trap for the people intended to be tested with it." (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, 2:9-15.)

Plaintiff's complaint specifically alleges that the duty owed to by Defendant was a "duty to use a reasonable degree of care to avoid erroneous test results to the foreseeable test subjects, including the plaintiff." (Complaint page 6, paragraph 33.) Plaintiff alleges that Defendant breached that duty because even though EtG was accurately detected in her test sample, she had not consumed alcoholic beverages. (*See id.*.)

Regardless of how Plaintiff characterizes her negligence claim, it fails as a matter of law because the only duties, if any, that a laboratory or third party administrator ("TPA") could owe to an individual tested for employment purposes are fulfilled if the lab properly collects and handles the employee's specimen, and the lab or TPA accurately reports the

chemical tests requested by the employer or other third-party. Plaintiff doe not contend that Defendant breached that duty. Thus, even if the Plaintiff had alleged a breach of such limited duties (which she has not), her claim would still fail as a matter of law.

### A. Courts In Other Jurisdictions Have At Most Recognized Only a Limited Duty With Respect to the Collection and Handling of Specimens

In her Complaint, Plaintiff alleges that the EtG tests performed by Defendant were flawed because the use of "many ordinary products, including . . . Purell sanitizer and other hand sanitizers" could result in positive test results. (Complaint, Page 4, Paragraph 23.) Plaintiff thus effectively claims that even though EtG was accurately detected in her urine, the positive results were attributable to a source other than the consumption of alcoholic beverages.

Every court that has addressed the very same claims asserted by Plaintiff here, *i.e.*, that a positive drug or alcohol test result *was caused by a source other than the use of drugs or alcohol*, has dismissed the claims, finding no legal duty owed by the testing laboratory to the tested individual. *See Caputo v. Compuchem Labs, Inc.*, Civ. A. No. 92-6123, 1994 WL 100084, *3-*4 (E.D. Pa. Feb. 23, 1994), *aff'd*, 37 F.3d 1485 (3d Cir. 1994); *Cooper v. Laboratory Corp. of Am. Holdings, Inc.*, 181 F.R.D. 312, 816-317 (D.S.C. 1997) (no duty to warn that fermentation of glucose in urine specimen may cause positive alcohol result), *aff'd* 150 F.3d 376 (4th Cir. 1998); *Vargo v. National Exch. Carriers Ass'n, Inc.*, 376 N.J. Super. 364, 380-382 (App. Div. 2005) (holding that a laboratory owes no duty to warn of potential alternate causes of positive drug test results); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995) (same). Indeed, no court has recognized any duty owed to a tested individual where – as here – the laboratory and TPA accurately reported the test results requested by the employer or other third-party (here, the California Board of Nursing.)

At least one other jurisdiction, Texas, has specifically held that under its law a laboratory (and thus, by extension, a TPA) does not owe an employee any duty of care whatsoever in testing an employee's urine for drugs or alcohol. *See Willis v. Roche Biomedical Labs., Inc.*, 61 F3d 313, 316 (5th Cir. 1995) (holding that, under Texas law, drug testers do not owe any duty of care in analyzing specimens); *SmithKline Beecham*, 903 S.W.2d

at 354.

Even most of the cases cited by Plaintiff recognize that, at best, a testing laboratory has only a limited duty to exercise reasonable care in the collection and handling of a specimen. Indeed, essentially every case relied on by Plaintiff in her opposition is based upon a claim that a testing laboratory was negligent in collection or handling specimens, either through misidentification or adulteration. *See Stinson v. Physicians Immediate Care Ltd.*, 269 Ill. App.3d 659, 660-61, 646 N.E.2d 930 (Ill. App. Ct. 1995); *Duncan v. Afton, Inc.*, 991 P.2d 739, 741 (Wy. 1999); *Elliott v. Laboratory Specialists*, 588 So.2d 175 (La. Ct. App. 1992); *Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1217 (Pa. 2003). As a result, those courts held that only a limited duty exists under Illinois, Wyoming, Louisiana and Pennsylvania law, with respect to collecting and handling of specimens. *See id.*

For example, in *Sharpe* – a primary case relied upon by Plaintiff – the plaintiff was a courier who presented herself to the hospital for a random drug test required by her employer. The plaintiff tested positive for cocaine, falsely she claimed, due to events ***"that affected the chain of custody associated with her urine sample, as a result of which it was misidentified and/or mishandled."*** *Sharpe*, 821 A.2d at 1217 (emphasis added). Notably, the *Sharpe* plaintiff only brought a claim against the hospital that collected her urine specimen, and did not assert any claim against the laboratory that tested her specimen. The court in *Sharpe* held "that the Hospital owed [the plaintiff] a duty of reasonable care with regard to collection and handling of her urine specimen for the employment-related drug testing." *Id.* Plaintiff's contrary suggestion notwithstanding, neither that nor any other court has held that a testing laboratory or TPA can somehow breach a duty of care even when the laboratory properly collects and handles a specimen.

The claims in *Sharpe* and the other cases cited by Plaintiff are a far cry from the claims alleged by Plaintiff here. Rather, the facts alleged in Plaintiff's Complaint are much more analogous to those presented in *Caputo, supra.* In that case, the plaintiff alleged that a testing laboratory's established cut-off for the detection of morphine was too low, and therefore resulted in a positive drug test not caused by the ingestion of illegal drugs. *See Caputo*, 1994 WL 100084 at *1. As here, there was no allegation in *Caputo* that the test result was

Case No. C07-3431 BZ

---
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
4

inaccurate to the extent that it showed evidence of morphine. *Id.* Rather, the plaintiff only contended that the laboratory should have explained the results better, or established a higher cut-off level so that exposure to sources other than illegal drugs would not cause a positive test result. While acknowledging legitimate concerns about improper handling of specimens, the District Court found no justification for imposing additional and unprecedented duties on a laboratory with the sole function of analyzing a sample and returning a report, particularly when that report is factually accurate. *See id.*

Likewise here, Plaintiff does not complain that the EtG tests were improperly performed or administered by Defendant, that their urine specimens were adulterated by Defendants or that the results provided, which showed the presents of EtG in their urine, were incorrect. (Complaint at 47-48.) Instead, as in *Caputo*, Plaintiffs complain that the positive test results were caused by their exposure to ordinary products that would metabolize as EtG, or by factors other than alcohol consumption, such as age, sex and certain medical conditions.

Thus, even if the case law cited by Plaintiff was applicable to her claim, Defendant has satisfied any duty of ordinary care that it owed to Plaintiff by accurately reporting the chemical test requested by Plaintiff's state licensing board. Defendant's function herein was limited to the scientific task of determining whether a urine sample contains EtG, no matter why it was present. Plaintiff's negligence claim therefore fails as a matter of law and should be dismissed.

### B. Plaintiff's Claim for Emotional Damages Fails Because It Is Derivitive of The Failed Claim for Negligence

Plaintiff's allegations of emotional distress within her cause of action for negligence are akin to a claim for negligent infliction of emotional distress. The negligent causing of emotional distress is not an independent tort but, rather, rests on the tort of negligence. Thus, in order for plaintiff's claim of emotional distress to survive, she must state a prima facie claim for negligence, including the elements of duty, breach, causation and damages. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.* (1989) 48 Cal.3d 583, 588, *Thing v. La Chusa* (1989) 48 Cal.3d 644, 647. Because plaintiff's claim for emotional damages is derivative of her negligence claim, and her negligence claim fails for the reasons set forth above, her claim for

negligent infliction of emotional distress also fails.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendant's moving papers, this action should be dismissed with prejudice in its entirety.

Dated: November 7, 2007

LAW OFFICES OF SAMUEL G. GRADER

/S/ Christian B. Green
CHRISTIAN B. GREEN
Attorney for Defendant NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS

# CERTIFICATE OF SERVICE

Matter: Wilson v. Compass Vision, Inc.
United States District Court, Northern District Case No.: 3:07-cv-03431 BZ

    I am a citizen of the United States, over the age of 18 years, and not a party to or interested in the within entitled cause. I am an employee of the Law Offices of Samuel G. Grader and my business address is 2180 Harvard Street, Suite 400, Sacramento, California 95815. On this date, I served the following documents:

**National Medical Services, Inc., d/b/a NMS Labs' Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint of Deborah Wilson**

_____ by placing a copy thereof enclosed in a sealed envelope with postage thereon fully prepaid. I am readily familiar with our firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service at Sacramento, California, on the same day in the ordinary course of business. Said correspondence was addressed as set forth below.

__XX__ by having a true copy of the documents listed above transmitted via email to the names, addresses via the US District Court, Northern District website.

_____ by causing personal delivery of a copy thereof to the person or the office of the person at the address listed below.

| **Attorney for Plaintiff** | **Attorney for Defendant Compass Vision, Inc.** |
|---|---|
| Joshua A. Ridless | Catherine A. Salah |
| Paul A. Moore, III | Gordon & Rees LLP |
| Law Offices of Joshua A. Ridless | 275 Batter Street, Suite 2000 |
| 244 California Street, Suite 300 | San Francisco, CA 94111 |
| San Francisco, CA 94111 | Tx: 415-986-5900  Fx: 415-986-8054 |
| Tel: 415-614-2600  Fx: 415-480-1398 | Email: csalah@gordonrees.com |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on November 7, 2007, at Sacramento, California.

                                                //Deborah J. Weidle
                                                Deborah J. Weidle