# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EVA QUISENBERRY,

                            Plaintiff,

    vs.

COMPASS VISION, INC.; QUEST
DIAGNOSTICS, INC. dba NORTHWEST
TOXICOLOGY,

                          Defendants.

CASE NO. 07CV1135 BEN (AJB)

ORDER GRANTING MOTION TO
DISMISS IN PART AND DENYING
IN PART

[Doc. ## 6, 7]

## I. INTRODUCTION

Plaintiff EVA QUISENBERRY ("Plaintiff") originally filed this lawsuit in a California state court. Defendants COMPASS VISION, INC. and QUEST DIAGNOSTICS, INC. ("Defendants") timely removed this action to this Court pursuant to 28 U.S.C. § 1441. In her Complaint, Plaintiff alleged the following claims: negligence, fraudulent misrepresentation, negligent misrepresentation, and negligent infliction of emotional distress. Plaintiff also asked for punitive and compensatory damages. Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and negligent infliction of emotional distress. The Court DENIES Defendant' Motion to Dismiss Plaintiff's negligence claim and Plaintiff's request for punitive damages.

1  Plaintiff's action will proceed solely on her negligence claim and her claim for damages.

2  ## II. FACTS

3  The facts are taken from Plaintiff's Complaint. *See Schneider v. California Dept. of*

4  *Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal . .

5  . is the complaint."). *See also No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*

6  *America West Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003) ("As required by Federal Rule

7  of Civil Procedure 12(b)(6), the facts are presented in the light most favorable to the Plaintiffs.").

8  At this stage, the Court is "required to 'presume all factual allegations of the complaint to be true

9  and draw all reasonable inferences in favor of the non-moving party'" – Plaintiff. *United States v.*

10  *LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004) (citations omitted). The Court will not

11  rely on or recite "legal conclusions cast in the form of factual allegations if those conclusions

12  cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d

13  752, 754-55 (9th Cir. 1994) (citations omitted).

14  Plaintiff is a registered nurse working under the supervision of the California State Board

15  of Nursing ("the Board"). Defendant Compass Vision, Inc. is a third-party administrator

16  specializing in the design, implementation, and management of drug and alcohol testing programs.

17  Plaintiff alleged that Compass Vision, Inc. contracted with the Board to administer an alcohol

18  testing program for nurses, including Plaintiff. Defendant Quest Diagnostics, Inc. operates lab

19  testing facilities in California and across the United States. Plaintiff alleged that Quest

20  Diagnostics, Inc. contracted with the Board to administer the EtG (ethyl glucuronide) testing

21  program for nurses, including Plaintiff.

22  Due to her prior history of alcohol abuse, Plaintiff agreed to undergo a recovery program.

23  Pursuant to her contract with the Board, Plaintiff was required to submit to random substance

24  abuse tests. According to Plaintiff, the EtG program ran by Defendants for purposes of testing

25  nurses for substance abuse sets forth an extremely low reporting limit. As a result, individuals who

26  consume ordinary products such as a mouthwash may fail the test. Plaintiff alleged that she did not

27  drink alcohol but that she had failed the test due to Defendants' negligence in running the EtG

28  program. Plaintiff was suspended from her job and is currently facing a revocation of her nursing

07CV1135-BEN (AJB)

1   license.

2                            **III.  STANDARD OF REVIEW**

3       Defendants move to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6).[1]

4   Review "on a motion to dismiss is limited to the contents of the complaint." *Pelletier v. Federal*

5   *Home Loan Bank of San Francisco*, 968 F.2d 865, 872 n.11 (9th Cir. 1992) (citation omitted); *see*

6   *also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency

7   of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the

8   complaint.'") (citing *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).  Indeed,

9   "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may* not look beyond the

10   complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's

11   motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)

12   (citation omitted).  And, as noted above, the Court is "required to 'presume all factual allegations

13   of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.'"

14   *LSL Biotechnologies*, 379 F.3d at 698; *see also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d

15   979, 984 (9th Cir. 2000) (In ruling on a motion to dismiss, "the court must presume all factual

16   allegations of the complaint to be true and draw all reasonable inferences in favor of the

17   nonmoving party.") (citation omitted).

18       "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d

19   729, 732 (9th Cir. 2001); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6)

20   authorizes a court to dismiss a claim on the basis of dispositive issue of law.").  "A claim may be

21   dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of

22   his claim which would entitle him to relief.'" *Id.* (citations omitted).

23

24       [1] Defendants also seek dismissal because Plaintiff "has failed to exhaust her administrative
remedies with the California Board of Nursing."  Specifically, they rely on California Health and
25   Safety Code section 1337.9 to support their claim that a nurse whose license is suspended must go
through an appeal process with the Board before resorting to the courts for relief.  However, this
26   argument is erroneous.  Plaintiff does not challenge the Board's actions with regard to her license in
this lawsuit.  Instead, she alleges – as a part of her claim for damages – that her license may soon be
27   revoked. The extent of Plaintiff's damages is not presently before this Court.  Although damages may
not arise from the "future" revocation of Plaintiff's license, Plaintiff also alleged that she was
28   suspended from her job.  As a result, she sufficiently articulated a claim for damages for purposes of
a Rule 12(b)(6) motion.

1    Under this standard, the Court's review is limited.  Even if recovery is very remote and

2  unlikely, Plaintiff is still entitled to offer evidence to support her claims.  *See United States v. City*

3  *of Redwood City*, 640 F.2d 963, 966 (1981) ("[E]ven if the face of the pleadings indicate that

4  recovery is very remote, the claimant is still entitled to offer evidence to support its claims.")

5  (citation omitted); *see also Kwai Fun Wong v. U.S.*, 373 F.3d 952, 969 (9th Cir. 2004) ("[A] court

6  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that

7  could be proved consistent with the allegations.") (citation omitted).  However, it is not "proper to

8  assume that [a plaintiff] can prove facts that it has not alleged or that the defendants have violated

9  [laws] in ways that have not been alleged." *Associated General California, Inc. v. California State*

10  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

11                    **IV.  DISCUSSION**

12  **A.____Misrepresentation**

13    In her reply, Plaintiff notes that she "goes forward against [Defendants] solely based on her

14  claims of negligence.  She hereby withdraws the claims of fraudulent misrepresentation and

15  negligent misrepresentation."  Thus, Plaintiff concedes that those causes of actions do not have

16  merit.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss with regard to these

17  claims.

18  **B.    Negligence**

19    In order to state a claim for negligence, Plaintiff must demonstrate duty, breach of duty,

20  causation, and damages. *Friedman v. Merck & Co., Inc.*, 107 Cal. App. 4th 454, 463 (Cal. App. 2

21  Dist. 2003).  "The determination of duty is primarily a question of law." *Keene v. Wiggins*, 69 Cal.

22  App. 3d 308, 312 (Cal. App. 4 Dist. 1977) (citing *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 46

23  (Cal. 1975)).  "On the issue of duty, California has 'repeatedly eschewed overly rigid common law

24  formulations . . . in favor of allowing compensation for foreseeable injuries caused by a

25  defendant's want of ordinary care.'" *Hegyes v. Unjian Enterprises, Inc.*, 234 Cal. App. 3d 1103,

26  1143 (Cal. App. 2 Dist. 1991) (citing *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 805 (Cal. 1979)).

27    Whether laboratory facilities owe a duty to the individuals whose specimens they test at the

28  request of others is an issue of first impression in this jurisdiction.  Nevertheless, our extensive

1  review of the myriad of cases in other jurisdictions makes it clear that the overall trend is for the

2  courts to recognize that a laboratory owes a duty to its test subject, regardless of whether a

3  contractual relationship exists between them. *See Cooper v. Laboratory Corp. of America*

4  *Holdings, Inc.*, 150 F.3d 376, 379 (4th Cir. 1998).

5      Both parties agree that California courts have not addressed this issue. The parties,

6  therefore, rely on a number of out-of-state cases dealing with a similar issue. The Court's review

7  of these and other relevant cases reveals that there is a split among courts in other jurisdictions on

8  the issue of duty. It appears that an overwhelming majority of the courts that decided this issue

9  held that a laboratory owes a duty to those whose specimens it tests.[2] Nevertheless, a number of

10 courts disagreed with this conclusion.[3]

11     Defendants argue that three California cases compel a finding that they do not owe a duty

12 of care to the employees whose specimens they test at the employers' request. *See Keene v.*

13 *Wiggins*, 69 Cal. App. 3d 308 (Cal. App. 4 Dist. 1977); *Felton v. Schaeffer*, 229 Cal. App. 3d 229,

14 232-33 (Cal. App. 4 Dist. 1991); *Mero v. Sadoff*, 31 Cal App. 4th 1466 (Cal. App. 2 Dist. 1995).

15 However, the Court's review of these and other cases indicates that they mandate an opposite

16 result.

17     In *Mero v. Sadoff*, 31 Cal App. 4th 1466 (Cal. App. 2 Dist. 1995), the court held that a

18

19  [2] *See, e.g., Chapman v. Labone*, 460 F. Supp. 2d 989, 1001 (S.D. Iowa 2006) (holding that a laboratory owed a duty to an employee whose urine sample it tested at the employer's request); *Palonis*

20  *v. Jewel Food Stores, Inc.*, 383 F. Supp. 2d 1072, 1074 (N.D. Ill. 2005) (concluding that a laboratory owes a duty of reasonable care to persons whose specimens it tests); *Williams v. National Railroad*

21  *Passenger Corp.*, 16 F. Supp. 2d 178, 181-82 (D. Conn. 1998) (allowing the employee who was discharged for failing a drug test to sue the medical facility for negligence in performing the test);

22  *Santiago v. Greyhound Lines, Inc.*, 956 F. Supp. 144, 152 (N.D.N.Y. 1997) (holding that a doctor hired by an employer to collect the employee's urine sample for drug testing had a duty to the employee to

23  collect his specimen with due care); *Elliott v. Laboratory Specialists, Inc.*, 588 So. 2d 175, 176 (La. Ct. App. 1991) (holding that "drug testing laboratories (acting as independent contractors) owe a duty

24  of care to the testee/employee, regardless of the contractual arrangement between the lab and the employer"); *Duncan v. Afton, Inc.*, 991 P.2d 739, 740 (Wyo. 1999) (noting that "a collection company

25  owes a duty of care to an employee when collecting, handling, and processing urine specimens for the purpose of performing substance abuse testing").

26  [3] *See, e.g., Tricoski v. Laboratory Corp. of America*, 216 F. Supp. 2d 444, 445-46 (E.D. Pa. 2002) (predicting that a Pennsylvania law would not recognize a duty of care by the lab to the

27  employees of its customers); *Herbert v. Placid Ref. Co.*, 564 So. 2d 371, 374 (La. Ct. App. 1990) (holding that a laboratory owes no duty of care to test subjects because its relationship is with the

28  employer not the employee); *Ney v. Axelrod*, 723 A.2d 719, 722 (Pa. Super. Ct. 1999) (holding that a laboratory does not owe a prospective employee a duty of care).

07CV1135-BEN (AJB)

1   physician who was negligent in his examination of an employee, which he performed at the

2   employer's request, had a duty to the employee "not to cause harm" during the examination. *Id.* at

3   1471 (citing *Keene*, 69 Cal. App. 3d at 313). Therefore, this decision allowed a plaintiff to sue a

4   physician who was negligent during his examination of the plaintiff – despite the fact that the

5   plaintiff had not hired or paid the physician herself.

6        In *Keene v. Wiggins*, 69 Cal. App. 3d 308 (Cal. App. 4 Dist. 1977), the court found that a

7   doctor evaluating the plaintiff at the plaintiff's employer's request owed no duty to the plaintiff.

8   The court noted that "it is well established" that a doctor-patient relationship must exist before a

9   physician can be liable for negligence. The court concluded that there was no doctor-patient

10  relationship between the parties and no duty owed to the plaintiff. It was obviously unforeseeable

11  that the *Keene* plaintiff, examined at the request of his employer, would rely on the examiner's

12  report to the employer for purposes of diagnosis and treatment. Because the *Keene* decision hinged

13  on the existence of a doctor-patient relationship, it sheds little light on the issue in this case.

14       Likewise, *Felton v. Schaeffer*, 229 Cal. App. 3d 229, 232-33 (Cal. App. 4 Dist. 1991),

15  which Defendants cite to support their position that no duty exists, involved a medical exam of a

16  job applicant performed by Dr. Schaeffer at the request of Felton's potential employer. Again, the

17  court concluded that the doctor owed no duty to a job applicant "because the physician/patient

18  relationship [was] absent here." *Id.* at 235.

19       Although Defendants call the situation in *Keene* and *Felton* "an analogous scenario," the

20  Court will not go as far. It is true that, like Eva Quisenberry, the plaintiffs in *Keene* and *Felton* (1)

21  were examined on the request of their employers and (2) later faced adverse employment actions

22  due to mistakes made during the examination. Unlike Ms. Quisenberry, however, these plaintiffs

23  sued the physicians who performed their exams for malpractice or negligence. Their claims hinged

24  on the requirement of establishing a doctor-patient relationship. Eva Quisenberry does not have to

25  overcome this burden. Therefore, despite their seeming similarities with the present situation,

26  these cases do not offer sufficient guidance to the Court.

27       Finally, in *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1134 (9th Cir. 2003), the Ninth

28  Circuit analyzed whether a flight attendant's negligent testing suit was preempted by federal law.

1    In that case, the plaintiff sued a laboratory because its negligence in performing and reporting the
2    plaintiff's urine test resulted in her termination. The court concluded that, "[d]espite the sensitivity
3    and federal concern with urine testing," the plaintiff's common law negligence claim against the
4    lab was not preempted. *Id.* Importantly, the Ninth Circuit then noted that the "common law duty
5    to exercise reasonable care to avoid harming people by negligence" applied to this case. *Id.* This
6    case, therefore, serves as a persuasive authority for finding that laboratories have a duty of care to
7    the individuals whose specimens they test.

8        In addition to relying on relevant case law, the Court conducted its own analysis prior to
9    deciding to impose a duty of care on Defendants in this case. Specifically, in determining whether
10   a duty of care exists, California courts balance the following factors: (1) the foreseeability of harm
11   to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the
12   connection between the defendant's conduct and the injury; (4) the extent to which the transaction
13   was intended to affect the plaintiff; (5) the extent of the burden to the defendant and consequences
14   to the community of imposing a duty of care; (6) the moral blame attached to the defendant's
15   conduct; (7) the availability, cost, and prevalence of insurance for the risk involved; and (8) the
16   policy of preventing future harm. *See, e.g., Rowland v. Christian*, 69 Cal. 2d 108, 112-13 (Cal.
17   1968) (superceded by statute on other grounds); *Keene v. Wiggins*, 69 Cal. App. 3d 308, 312 (Cal.
18   App. 4 Dist. 1977).

19       First, the Court must analyze whether the harm to Plaintiff was foreseeable. We cannot
20   imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing
21   of individuals. Laboratory testing is a fact of life in today's labor market, and it is often a pre-
22   requisite to being hired, promoted, or even continuously employed. As some cases in other
23   jurisdictions demonstrate, inaccurately reported test results can have dire consequences on the
24   livelihood of individuals. Employees can lose their jobs, and job applicants can miss out on an
25   opportunity to be considered for a new position or a well-deserved promotion. It is, therefore, fully
26   foreseeable that a mishandling or inaccurate reporting of laboratory test results can harm the
27   individual whose specimens the laboratory is testing.

28       Next, the Court must analyze the degree of certainty that the plaintiff suffered injury. At

1  this stage of legal proceedings, the Court must take Plaintiff's allegations as true.  Plaintiff alleged

2  that – because of Defendants' inaccurate reporting of her test results – she was suspended from

3  work, faced with having to restart a three-year recovery program, and awaiting a revocation of her

4  nursing license.  At this stage of the proceedings, these allegations are sufficient

5      Furthermore, the connection between Defendants' conduct and Plaintiff's injury here is not

6  doubtful or remote.  If, in fact, Plaintiff was injured by Defendants' conduct, there is a close

7  connection between the conduct and her injury.  Moreover, the laboratory testing of Plaintiff's

8  specimens was fully intended to affect Plaintiff.  Defendants were well aware that – depending on

9  the outcome of the test – a test result measuring Plaintiff's level of alcohol consumption could

10  have a direct effect on Plaintiff's employment status.

11      With regard to the availability of insurance and the moral blame factors, the evidence on

12  the record in insufficient to balance these factors.  Finally, in balancing the burden on Defendants

13  with the need to prevent future harm, the Court finds that any potential burden on Defendants is

14  outweighed by the need to protect the public from the consequences of erroneous laboratory test

15  results.  Moreover, the Court is not persuaded that an imposition of duty on laboratories to act with

16  due care when handling specimens and reporting test results will lead to unwarranted extension of

17  liability.

18      The Court's balancing of the above factors weighs in favor of finding that laboratories have

19  a duty to individuals whose specimens they test.  Decisions in other jurisdictions imposing a duty

20  in these types of cases further support the Court's conclusion.  To hold otherwise would mean to

21  deprive thousands of individuals from an opportunity to challenge or receive any recourse for the

22  repercussions they may suffer due to negligently performed laboratory tests producing erroneous or

23  inaccurate test results.  Public policy clearly supports holding a laboratory accountable to the

24  individuals whose specimens it tests.  *Chapman v. Labone*, 460 F. Supp. 2d 989, 1001(S.D. Iowa

25  2006).  The Court, therefore, concludes that Defendants have a duty of care to Plaintiff in this case.

26  Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiff's negligence claim.

27  **C.    Negligent Infliction of Emotional Distress**

28      In her Complaint, Plaintiff also asserts what appears to be a claim for negligent infliction of

1  emotional distress. In California, "[r]ecovery of emotional distress damages has been allowed,

2  absent impact or physical injury, in certain specialized classes of cases. Where the negligence is of

3  a type which will cause highly unusual as well as predictable emotional distress, recovery has been

4  allowed." *Allen v. Jones*, 104 Cal. App. 3d 207, 215 (Cal. App. 3 Dist. 1980); *Friedman v. Merck*

5  *& Co.*, 107 Cal. App. 4th 454, 484 (Cal. App. 2 Dist. 2003).

6       It is, therefore, quite possible that California courts will allow a recovery of damages for

7  emotional distress by lab patients in some circumstances where emotional distress is predictable

8  and highly unusual. For example, an erroneous lab diagnosis labeling an individual as being HIV-

9  positive or as having another type of serious illness would undoubtedly cause the patient severe

10 emotional distress, even in the absence of a physical injury. *See Molien v. Kaiser Foundation*

11 *Hospitals*, 27 Cal. 3d 916, 930 (Cal. 1980) (allowing a claim for emotional distress where a patient

12 was misdiagnosed as having syphilis). Such an individual would not know for sure whether her

13 diagnosis is erroneous, and she would most likely assume that she is suffering from a serious or a

14 life-threatening illness. Because of this uncertainty surrounding her health or even a possibility of

15 an impeding death, she may suffer severe emotional distress even in the absence of a physical

16 injury.

17       Meanwhile, an individual whose tests results indicate she had been drinking is unlikely to

18 suffer highly unusual emotional distress. First, these test results are not likely to suggest that she

19 has a serious or a life-threatening health condition. Furthermore, in this scenario, an individual

20 would know with certainty whether she had, in fact, been drinking and thus she would immediately

21 recognize that the lab results are erroneous. Therefore, even taking Plaintiff's allegations in this

22 case as true, any distress suffered by Plaintiff does not rise to the level so "severe" or "highly

23 unusual" that it would justify allowing recovery of emotional distress damages absent a physical

24 injury.

25       It is well established law that, absent exceptional circumstances not present here, a plaintiff

26 cannot recover emotional distress damages absent a physical injury. *See, e.g., Friedman v. Merck*

27 *& Co.*, 107 Cal. App. 4th 454, 484 (Cal. App. 2 Dist. 2003). In her Complaint, Plaintiff alleges

28 that she suffered economic damages such as loss of her job and possible suspension of her nursing

license. However, Plaintiff has not alleged that she suffered a physical injury. As a result, Plaintiff's claim for emotional distress damages cannot stand. *See Mercado v. Leong*, 43 Cal. App. 4th 317, 324 (Cal. App. 3 Dist. 1996) (noting that emotional distress "damages are unlikely where the interests affected are merely economic"). Therefore, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's emotional distress claim.

**D.      Punitive Damages**

Plaintiff alleges that she is entitled to punitive damages because Defendants "acted with reckless indifference to [her] rights." In California, punitive damages are allowed "where it is proven by clear and convincing evidence that the defendant had been guilty of oppressions, fraud, or malice." Cal. Civ. Code § 3294. "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton." *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal. App. 4th 306, 328 (Cal. App. 2 Dist. 1992) (internal citations and quotations omitted).

Although it appears uncertain whether Plaintiff will be able to recover punitive damages in this case, at the motion-to-dismiss stage Plaintiff's allegations must be taken as true. As such, they are sufficient to allow Plaintiff's claim for punitive damages to proceed. Defendants' Motion to Dismiss Plaintiff's punitive damages claim is, therefore, DENIED.

### V.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The Court GRANTS Defendants' Motion to Dismiss Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and negligent infliction of emotional distress. The Court DENIES Defendants' Motion to Dismiss Plaintiff's negligence and punitive damages claims.

IT IS SO ORDERED.

DATED: November 14, 2007

Hon. Roger T. Benitez
United States District Judge

07CV1135-BEN (AJB)